# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| LBT IP II LLC<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.<br><br>Defendant. | Civil Action No. 6:21-CV-1210-ADA<br><br>**JURY TRIAL DEMANDED** |

## ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

Before the Court is Defendant Uber Technologies, Inc.'s ("Uber") Motion to Transfer Venue under 28 U.S.C. § 1404(a) to the Northern District of California. ECF No. 30. Plaintiff LBT IP II LLC ("LBT II") filed its Response (ECF No. 51), and Uber filed its Reply (ECF No. 52). After careful consideration of the parties' briefs and the applicable law, the Court **GRANTS** Uber's Motion to Transfer to the Northern District of California.

### I. FACTUAL BACKGROUND

Plaintiff LBT II filed this lawsuit accusing Defendant Uber of infringing on U.S. Patent Nos. 7,728,724 ("the '724 patent"), 7,598,855 ("the '855 patent"), 8,531,289 ("the '289 patent"), and 8,224,355 ("the '355 patent") (collectively, the "Asserted Patents"). ECF No. 1 ¶ 2. LBT II alleges that Uber coordinates, controls, and provides ride-hailing services that practice the technology of the Asserted Patents. *Id.* ¶¶ 60, 76, 93, 109. The accused functionalities are Uber's "ride-hailing and food delivery services" technologies, specifically the "hardware, applications,

1

and functionalities and any related Uber technologies that interface with the Uber Driver and Rider Applications to provide ride-hailing and food delivery services." *Id.* ¶ 24.

Uber is a Delaware corporation with its principal place of business in San Francisco, California. *Id.* ¶ 4. It also maintains a physical presence in Austin, Texas. *Id.* ¶ 9.

LBT II is a Texas limited liability company with its principal place of business in Graham, Texas. *Id.* ¶ 1.

## II. LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The party moving for transfer carries the burden of showing good cause. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) (hereinafter "Volkswagen II") ("When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must ... clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'") (quoting 28 U.S.C. § 1404(a)).

"The preliminary question under Section 1404(a) is whether a civil action might have been brought in the [transfer] destination venue." *Volkswagen II*, 545 F.3d at 312 (internal quotations omitted). If the inquiry is satisfied, the Court then determines whether transfer is proper by analyzing and weighing public and private interest factors. *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004); *In re Apple Inc.*, 979 F.3d 1332, 1338 (Fed. Cir. 2020) (applying Fifth Circuit law).

The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy[,] expeditious and inexpensive."[1] *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is *clearly* more convenient. *Volkswagen II*, 545 F.3d at 314 n.10; *see also In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013) (holding A court should not deny transfer where "only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum").

However, defendants should expect and accept some inconvenience as a result of an action brought against them. The Fifth Circuit stated that when determining whether to transfer an action, "the fact that litigation would be more convenient for the defendant elsewhere is not enough to justify transfer." *Def. Distributed v. Bruck,* 30 F.4th 414, 433 (5th Cir. 2022). Rather, "the party

---

[1] The third factor of "cost of attendance for willing witnesses" is represented in different ways by the Fifth Circuit and the Federal Circuit interpreting Fifth Circuit Law. The Fifth Circuit last spoke on the issue in using the "cost of attendance" standard. *Def. Distributed v. Bruck,* 30 F.4th 414, 433–34 (5th Cir. 2022) (citing *In re Volkswagen of Am., Inc,* 545 F.3d 304, 315 (5th Cir. 2008)). This standard is different from the Federal Circuit's interpretation of the law of the 5th Circuit which has recently been expressed as "the relative convenience of the two forums for potential witnesses." *In re Juniper Networks, Inc.,* 14 F.4th 1313, 1316 (Fed. Cir. 2021); *see In re Acer Am. Corp.*, 626 F.3d 1252, 1255–56 (Fed. Cir. 2010) (analyzing convenience under the third private interest factor).

must adduce evidence and argument that clearly establish good cause for transfer based on convenience and justice." *Id.*

### III. DISCUSSION

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the Northern District of California ("NDCA"). Uber asserts that this case could have originally been brought in the NDCA because its headquarters are in Northern California. ECF No. 30 at 1. LBT II does not contest this point. This Court finds that venue would have been proper had LBT II originally filed this case in the NDCA. Thus, the Court proceeds with its analysis of the private and public interest factors to determine if the NDCA is clearly more convenient than the Western District of Texas ("WDTX").

**A. The Private Interest Factors**

***i. The Relative Ease of Access to Sources of Proof***

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-CV-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 13, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d at 1340 (citing *In re Genentech*, 566 F.3d 1388, 1340 (Fed. Cir. 2009)). The Fifth Circuit and Federal Circuit have held that, even in the context of electronic documents that can be accessed anywhere on earth, this factor is not superfluous. *In re Genentech*, 566 F.3d at 1346; *see Volkswagen II*, 545 F.3d at 316; *see also in re Juniper Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021). The Federal Circuit has recently

4

held, however, that it is erroneous not to consider: "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *7 (Fed. Cir. Nov. 15, 2021).

LBT II asserts that documents of record are stored either in Austin, Texas, with Joseph Scalisi, the inventor of PocketFinder®, or in Sherwood, Oregon. ECF No. 51 at 7. In addition, LBT II states that devices and approximately two dozen samples related to the Asserted Patents and LBT Inc.'s (a separate entity from LBT II) product, PocketFinder®, are located in Austin. ECF No. 52 at 2 n.2.

Uber argues this factor favors transfer. First, Uber alleges that evidence relating to the accused Uber Platform is predominantly in the NDCA where Uber's headquarters, R&D, and engineering operations are located. ECF No. 30 at 4; ECF No. 37 ¶ 5. Natalie Love, an Uber employee, asserts that none of the research, design, or development of the accused functionalities occurred within the WDTX. ECF No. 37 ¶ 8. Furthermore, the Uber platform uses Google's Application Program Interface ("API"). ECF No. 36 ¶¶ 27, 28. As Uber addresses, Google APIs are likely designed and developed by Google employees in the NDCA. ECF No. 30 at 5–6.

Uber also speculates that due to licensing negotiations between LBT Inc. and Apple, Inc. ("Apple"), Apple may have evidence relevant to damages and patentability such as disclosures or sales, potential prior art, or valuations of the Asserted Patents. ECF No. 30 at 7. Uber asserts a similar argument for one of LBT Inc.'s competitors, Whistle Labs, Inc., which offers a spinoff of the PocketFinder® called Tagg. *Id.*

LBT II asks the Court to consider that patent litigation typically utilizes sources of proof that are readily convertible to an electronic medium that can be sent relatively effortlessly from any location. LBT II goes on to echo that Uber has not identified sources of proof that cannot be

transferred electronically. LBT II stresses that the importance of the location of sources of proof is highly diminished when the convenience or burden associated with electronic discovery bears little relation to the location of the underlying document. Despite the merits of LBT II's position, the Federal Circuit in interpreting Fifth Circuit Law has stated that the locations of sources of proof are still relevant. *In re Genentech, Inc.*, 566 F.3d at 1346.

Relevant sources of proof exist in both districts. Although both LBT II and Uber clearly show that there is relevant evidence located in the NDCA and the WDTX, there is simply more evidence relating to this controversy in the NDCA. Although the Court gives weight to the highly relevant physical materials and documents stored in Austin, the fact that the accused products were developed in the NDCA means the most relevant sources of proof will predominantly come from that district. The NDCA also contains several licensing agreements that would be relevant to damages. For those reasons, the Court finds this factor favors transfer.

### *ii. The Availability of Compulsory Process to Secure the Attendance of Witnesses*

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." FED. R. CIV. P. 45(c)(1)(A), (B)(ii). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Fintiv, Inc.*, 2019 WL 4743678, at *5 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014).

Uber named several third-party witnesses, but it did not identify if each witness was willing or unwilling. Federal courts presume witnesses are unwilling when they are third parties who have not been identified as willing witnesses. *In re Dish Network LLC,* No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) (holding that "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor") (citing *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018)). Therefore, this Court will consider the following witnesses as unwilling witnesses: Desiree Mejia, Michael Beydler, Roger Anderson, John Ellis, Ronnie Falcao, Bill Schilit, Frank van Diggelen, Jennifer Wang, and Krish Vitaldevara.

Both parties identify three of the Asserted Patents' inventors as relevant third-party witnesses. According to her LinkedIn profile, Desiree Mejia appears to reside in Irvine, California. ECF No. 32-5 at 1. Roger Anderson appears to reside in Arcadia, California. ECF No. 38-1 at 3. Michael Beydler appears to reside in Hawai'i. ECF No. 38-2 at 3. LBT II argues that none of these inventors live in the NDCA. ECF No. 51 at 4. This characterization, however, is misleading because Mejia and Anderson are within the subpoena power of the NDCA. *See* FED. R. CIV. P. 45(c)(1)(A), (B)(ii). Only Beydler is beyond the subpoena power of both the NDCA and the WDTX.

Uber also identifies several prior art witnesses as unwilling. Veronica Falcao is an author of an article describing an active badge location system. ECF No. 34-3 at 2. As stated in her LinkedIn profile, Falcao appears to reside in Mountain View, California. ECF No. 34-7 at 1. John Ellis and Bill Schilit are authors of an article describing their tests of a variety of mobile applications. ECF No. 34-4 at 1. Ellis appears to live in Redwood City, California. ECF No. 34-6 at 1. Schilit appears to live in the San Francisco Bay Area. ECF No. 34-8. The NDCA could

subpoena all prior art witnesses who reside in California. *See* FED. R. CIV. P. 45(c)(1)(A), (B)(ii). LBT II does not dispute the relevancy of the prior art witnesses that Uber identifies.

Uber asserts that Google and Apple employees with relevant knowledge of the mapping API services provided to Uber likely reside in the NDCA. ECF No. 30 at 11. Though Uber does not control these APIs, it names three Google employees who might have relevant knowledge of the services. *Id.* at 6. Frank van Diggelen, Distinguished Engineer at Google, appears to reside in Santa Clara, California. ECF No. 32-2 at 1. Jennifer Wang, Product Manager at Google, appears to reside in Berkeley, California. ECF No. 32-3 at 1. Krish Vitaldevara, Director of Product at Google, appears to live in Mountain View, California. ECF No. 32-4 at 1. Similar to the prior art witnesses, the NDCA could subpoena each Google employee who resides in California. *See* FED. R. CIV. P. 45(c)(1)(A), (B)(ii). Again, LBT II does not dispute the relevancy of the Google employees with knowledge of the mapping API services.

In the Complaint, LBT II repeatedly refers to the PocketFinder® product that uses the technologies in the Asserted Patents. ECF No. 1 ¶¶ 33–37. LBT II also notes that Apple considered marketing and selling PocketFinder® in Apple stores before Steve Jobs died. *Id.* ¶ 37. Consequently, Uber alleges that Apple likely has relevant knowledge regarding patentability and damages. ECF No. 30 at 7. Uber also names several competitors that might have relevant knowledge. *Id.* Each competitor has a significant presence in the NDCA. *See* ECF Nos. 33-5 at 2, 33-6 at 1, 33-7 at 1. Though Uber does not name any specific witnesses from Apple or other LBT II competitors, it identifies a pool of likely third-party witnesses over which the NDCA can exercise subpoena power. *See id.* "While greater specificity would certainly strengthen [Defendant's] position," Uber provides enough information to satisfy the Court of the relevancy

of the third-party competitors. *Oyster Optics, LLC v. Coriant America Inc.*, No. 2:16-CV-1302, 2017 WL 4225202, at *6 (E.D. Tex. Sept. 22, 2017).

Overall, the Court finds that this factor favors transfer. At least nine known third-party witnesses would be subject to compulsory process in the NDCA, while none of the known third-party witness would be subject to compulsory process in the WDTX.

### *iii. The Cost of Attendance and Convenience for Willing Witnesses*

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech*, 566 F.3d at 1343. When analyzing this factor, the Court should consider all potential material and relevant witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 WL 4155236, at *16 (E.D. Tex. Sept. 19, 2017). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 203). But it is unclear when the 100-mile rule applies, as the Federal Circuit has stated that courts should not apply the rule "rigidly" in some cases where witnesses would be required to travel a significant distance no matter where they testify. *In re Apple*, 979 F.3d at 1341 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). The Federal Circuit has indicated that time away from an individual's home is a more important metric than distance. *Id.*

In its Motion, Uber identifies several willing witnesses that are relevant to the alleged infringement. ECF No. 30 at 4. Two Uber employees, Bozhena Bidyuk and Natalie Love, indicate

that they are willing witnesses. ECF No. 36 ¶ 2; ECF No. 37 ¶ 3. Additionally, the majority of the employees who work on the accused functionalities are engineers and product managers at Uber's headquarters. ECF No. 36 ¶¶ 7–9. Four categories of engineers have knowledge of the accused functionalities: (1) the Driver Team; (2) the Rider Team; (3) the Location, Trip Context, and Sensor Mobile Teams; and (4) the Maps Team. *Id.* ¶¶ 10–9. None of the employees in these categories are in Texas. *Id.* Uber specifically names eight witnesses who have relevant knowledge of the accused functionalities. *Id.* ¶¶ 11, 13, 15–17, 19, 21–22. The named witnesses are located in the NDCA. *Id.* Additionally, Uber asserts that none of its employees in the WDTX have relevant knowledge of the accused functionalities. *Id.* ¶¶ 8, 24. LBT II's Complaint identified one Uber facility in WDTX. ECF No. 1 ¶ 13. However, this facility is closed, and its employees were not connected to the research, design, or development of the accused functionalities. ECF No. 36 ¶ 26. Thus, none of the relevant Uber employees are located in Texas, whereas the majority of the witnesses are located in the NDCA. *Id.* ¶¶ 7–19, 21–22, 24–25.

In its Response, LBT II names three primary witnesses it intends to call at trial. ECF No. 51 at 9–10. The first witness LBT II intends to rely on is Joseph Scalisi. He is a non-party witness who has significant knowledge about LBT II's structure, business model, and services. *Id.* LBT II emphasizes that Scalisi finds this District to be far more convenient than the NDCA. *Id.* at 11. LBT II also plans to call David Morse, who resides in Oregon. *Id.* at 10. As the president of LBT, Inc. and a named inventor on three of the asserted patents, Morse has relevant knowledge regarding the Asserted Patents, LBT II's relationship with the patents, and issues relating to damages. *Id.* Lastly, LBT II expects Gregg Haugen to testify at trial. *Id.* Haugen is the Chief Executive Officer of LBT II and resides in Minnesota. *Id.* He has knowledge of the "origination and management of

LBT II's patent portfolio." *Id.* LBT II stresses that Morse and Haugen would need to secure airfare and overnight lodging to attend a trial in either the WDTX or the NDCA. *Id.*

LBT II contends that "the convenience of party witnesses is given little weight." *Id.* at 9 (citing *SynKloud Techs., LLC v. Dropbox, Inc.*, No. 6:19-CV-00525-ADA, 2020 WL 2494574, at *4 (W.D. Tex. May 14, 2020); *Ecofactor, Inc. v. Vivint, Inc.*, No. 6:20-CV-00080-ADA, 2021 WL 1535414, at *5 (W.D.Tex. Apr. 16, 2021) ("Courts properly give more weight to the convenience of non-party witnesses than to party witnesses.")). However, this argument conflicts with the recent guidance from the Federal Circuit. *See, e.g., In re Google LLC*, 2021 WL 4427899, at *4 ("While it is true that the witnesses in the Northern District of California are largely affiliated with the parties, that does not negate the inconvenience and cost to those individuals to travel a significant distance to testify."); *In re Apple Inc.*, 979 F.3d at 1341–42. Therefore, this Court will consider the inconvenience and cost to all willing witnesses. LBT II also notes that Uber does not name any willing witnesses that plan to attend trial. ECF No. 51 at 14. However, this Court cannot presume that most of Uber's witnesses will not testify at trial. *See In re Uber Techs. Inc.*, 852 F. App'x 542, 543 (Fed. Cir. 2021) (district court erred by "simply presuming that few, if any, party and non-party identified witnesses will likely testify at trial"). Even if most of Uber's witnesses did not testify, this factor would favor transfer because LBT II only identified one witness within the WDTX. *See In re Samsung Elecs., Ltd.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021) ("Even if not all witnesses testify, with nothing on the other side of the ledger, the factor strongly favors transfer."). The multitude of witnesses identified in California outweighs the single witness in Texas. ECF No. 52 at 1.

In other portions of its brief, LBT II attempts to convince the Court that Scalisi is an unwilling witness. ECF No. 51 at 8. Its argument is misleading because Scalisi is willing to testify

in the WDTX. *Id.* A witness cannot be both willing and unwilling. *See In re Apple*, No. 6:21-CV-00528, 2022 WL 1676400, at *2 (Fed. Cir. May 26, 2022) (indicating that a witness is willing if a party indicates that the witness is willing to attend trial in the WDTX but unwilling to attend trial thousands of miles from his home). Thus, the Court will consider Scalisi a willing witness in its analysis.

The NDCA would likely be more convenient than the WDTX for the willing witnesses in this case. This Court counts at least ten party witnesses in the NDCA. A significant number of third-party willing witnesses also reside in California and other nearby states. The WDTX contains only one material witness—Joseph Scalisi. LBT II did not deny the relevance of Uber's witnesses in its Response. Instead, LBT II introduced Scalisi as the most important witness and stressed the expense of forcing him to travel to the NDCA. LBT II also minimized the costs of travel for its witnesses in Oregon and Minnesota, despite their lack of proximity to Texas. Uber's presence in California dwarfs the single witness residing in Texas. When comparing both the quantity and quality of relevant material witnesses, the NDCA is more convenient.

### *iv. All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive*

Both parties agree that this factor is neutral, and the Court agrees.

## B. The Public Interest Factors

### *i. Administrative Difficulties Flowing from Court Congestion*

This factor concerns whether an appreciable difference in docket congestion exists between the two forums. *See In re Juniper*, 14 F.4th at 1322. This factor also considers "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d at 1347. Court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor

of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.*

The parties cite statistics regarding the relative caseloads of the WDTX and the NDCA. ECF No. 30 at 14; ECF No. 51 at 13–14. This Court has approximately 816 open patent cases, while nineteen judges share 215 active patent cases in the NDCA. ECF No. 30 at 14. Uber argues that this factor is somewhat irrelevant, and that the NDCA's smaller caseload slightly favors transfer to the NDCA. *Id*. Conversely, LBT II maintains that the average time to trial is significantly faster in the WDTX because "cases that went to trial were terminated nearly 1.5 years more quickly in this District than in the Northern District of California." ECF No. 51 at 12 (citing *Scramoge Tech. Ltd. v. Samsung Elec.'s Co.*, No. 6:21-CV-00454, 2022 U.S. Dist. LEXIS 92262, at *11 (W.D. Tex. May 16, 2022)). LBT II also argues that the COVID-19 pandemic caused a backlog in the NDCA's schedule. ECF No. 51 at 12. This backlog could cause significant delays in organizing a Markman hearing and proceeding to trial. *Id.* Unlike the NDCA, the WDTX has conducted several in-person jury trials throughout the pandemic. *Id.* Therefore, LBT II believes that this Court is better equipped to hear this case in a timely manner. *Id.*

Relying on the statistics provided by both parties, the Court finds that this factor is neutral. Although this District is more congested than the NDCA in terms of caseload, the median time-to-trial is significantly faster in the WDTX. While the Federal Circuit has opined that the court congestion factor is the "most speculative" of the factors, disregarding time to trial would render the factor superfluous. *In re Juniper*, 14 F.4th at 1322; *see also In re Genentech*, 566 F.3d at 1346 (holding that the Ease of Access to Evidence factor should not be interpreted in a way which would render the factor superfluous). The Federal Circuit notes that the impact of the COVID-19 pandemic is similarly speculative. *See In re Google LLC*, 2021 WL 5292267, at *3. Even if this

Court did consider court congestion and the impact of the COVID-19 pandemic to weigh in favor of transfer, the Federal Circuit has repeatedly diminished the importance of this factor in transfer analysis. *In re Genentech, Inc.*, 566 F.3d at 1347.

For those reasons, the Court finds that this factor is neutral.

### *ii. Local Interest in Having Localized Interests Decided at Home*

Under this factor, the Court must evaluate whether it has a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 315. Local interests in a patent case "are not a fiction." *In re Samsung*, 2 F.4th at 1380. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-CV-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1345 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). However, courts should not heavily weigh a party's general contacts with a forum that is untethered from the lawsuit, such as a general presence. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *See id.*

Uber argues that this factor favors transfer because its headquarters and research and design facilities are located in the NDCA. ECF No. 30 at 14. The events that gave rise to this suit occurred in the NDCA. ECF No. 52 at 5. Moreover, Uber argues that this District has no local interest in resolving this case. ECF No. 30 at 14. LBT II is based in Graham, Texas, which is in the Northern District of Texas. ECF No. 52 at 5. Since LBT II's office is located outside of the WDTX, Uber asserts that the WDTX is not LBT II's home forum. *Id.* The only connection LBT II has to the WDTX is the arrival of one inventor, Scalisi. ECF No. 30 at 15. Uber contends that Scalisi's sudden move to Austin, Texas in February 2021 should carry little weight due to its "recent and ephemeral" nature. ECF 51-1 ¶ 7; ECF 52 at 1 (citing *In re Juniper*, 14 F.4th at 1320). Thus, Uber argues that the NDCA has a stronger local interest in resolving this case.

Conversely, LBT II contends that this factor disfavors transfer because LBT II is at home in Texas. ECF No. 51 at 14. Despite the size of LBT II in comparison to Uber, LBT II claims that the WDTX has a significant localized interest in hearing this case. *Id.* Additionally, LBT II argues that Uber maintains a significant presence in Texas and the WDTX. *Id.* Therefore, LBT II argues that the WDTX has a stronger local interest in resolving this case.

This Court finds that the NDCA has a stronger local interest in this case. The crux of this factor is to identify where the events forming the basis for infringement—design, development, and sale of the accused products—transpired. *See In re Juniper*, 14 F.4th at 1320. Although Uber formerly had a driver support hub in Austin, "none of the research, design, or development efforts relating to the accused functionalities" have occurred in the WDTX. ECF No. 37 ¶ 9; ECF No. 36 ¶¶ 8, 24. The sale of the accused services cannot support a localized interest in either the NDCA or the WDTX because Uber markets and sells the accused services throughout the United States. ECF No. 51 at 14. The WDTX only witnessed the sale of the accused services, whereas the design

and development of the services occurred in the NDCA. Even if Uber had a substantial presence in this District, its presence would be untethered to the events forming the basis for infringement. Therefore, the Court finds that the NDCA has a stronger local interest. This factor favors transfer.

### *iii. Familiarity of the Forum with the Law That will Govern the Case*

Both parties agree that this factor is neutral, and the Court agrees.

### *iv. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law*

Both parties agree that this factor is neutral, and the Court agrees.

## IV. CONCLUSION

Having considered the private and public interest factors, the Court's conclusions for each factor is summarized in the following table:

| Factor | The Court's Finding |
| --- | --- |
| Relative ease of access to sources of proof | Slightly Favors Transfer |
| Availability of compulsory process to secure the attendance of witnesses | Favors Transfer |
| Cost of attendance for willing witnesses | Favors Transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Neutral |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest | Favors Transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

The bulk of relevant witnesses and sources of proof reside in the NDCA. This Court cannot compel more witnesses than the NDCA, and the trial in the NDCA is more convenient for the

willing witnesses. The NDCA has a stronger local interest in resolving this case at home. The remaining factors are neutral. Uber has met its burden to show that the NDCA is clearly more convenient than the WDTX.

**IT IS ORDERED** that Defendant's Motion to Transfer Venue to the Northern District of California is **GRANTED.**

SIGNED this 6th day of July, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE