Mark N. Reiter (Texas Bar No. 16759900), admitted *pro hac vice*
mreiter@gibsondunn.com
Robert A. Vincent (Texas Bar No. 24056474), admitted *pro hac vice*
rvincent@gibsondunn.com
Audrey Yang (Texas Bar No. 24118593), admitted *pro hac vice*
ayang@gibsondunn.com
Ashbey N. Morgan (Texas Bar No. 24106339), admitted *pro hac vice*
anmorgan@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
2001 Ross Avenue, Suite 2100
Dallas, TX 75201-6912
Telephone:  (214) 698-3100
Fax:  (214) 571-2907

Andrew W. Robb (#291438)
arobb@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
310 University Avenue
Palo Alto, CA 94301-1744
Telephone:  (650) 849-5300
Fax:  (650) 849-5034

*Attorneys for Defendant Uber Technologies, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LBT IP II LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>Uber Technologies, Inc.,<br><br>    Defendant. | Case No. 3:22-CV-03985-RFL<br><br>**UBER TECHNOLOGIES, INC.'S REPLY CLAIM CONSTRUCTION BRIEF**<br><br>**<u>Hearing</u>:**<br>Date:  May 19, 2026<br>Time:  9:00 a.m.<br>Place:  450 Golden Gate Avenue, San Francisco, CA 94012<br>Judge:  Hon. Rita F. Lin |

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...................................................................................................... 1

II.   DISPUTED CLAIM TERMS ..................................................................................... 2

      A.    "location request" ('724 patent cls. 8, 13)..................................................... 2

            1.    Uber's construction resolves ambiguity and avoids absurd results. ................ 2

            2.    Locating a tracking device necessarily means locating a specific
                  individual or object. ........................................................................................ 3

            3.    Uber's construction relies on the patentee's characterization of the
                  alleged invention. ............................................................................................ 4

            4.    Uber's construction does not conflate identification codes with location
                  requests............................................................................................................ 4

      B.    "activating the tracking device" / "activating a global positioning system
            circuit within the tracking device" ('724 patent cls. 8, 13)........................... 5

      C.    "[wherein a latitude and longitude of the tracking device results
            from/calculating the location data of the tracking device resulting from] a
            comparison of measurements from gps satellites to the tracking device,
            measurements of distances between two or more gps satellites, and
            measurements of relative orientations of the two or more gps satellites, the
            tracking device, and earth" ('724 patent cls. 8, 13) ...................................... 7

      D.    "graphical mapping tiles . . . from multiple mapping service providers" ('355
            Patent cl. 1)..................................................................................................... 9

      E.    "alert message" ('355 Patent cl. 1).............................................................. 10

      F.    "wizard menu" ('355 patent cl. 1)................................................................ 11

III.  INDEFINITE CLAIM TERMS ............................................................................... 12

      A.    "reference signal to triangulate location information utilizing a first
            transmitter/receiver station and a second transmitter/receiver station" ('724
            patent cl. 13)................................................................................................. 12

      B.    "without direct line-of-sight between a global positioning system satellite and
            the tracked device" / "without line-of-sight between a global positioning
            system satellite and the tracked device" ('724 patent cls. 8, 13) ............... 13

      C.    "transmitting the location data" ('724 patent cl. 13).................................... 14

Gibson, Dunn &
Crutcher LLP

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Piledriving Equip., Inc. v. Geoquip, Inc.*,
637 F.3d 1324 (Fed. Cir. 2011)......................................................................................................9

*American Medical Systems, Inc. v. Biolitec, Inc.*,
618 F.3d 1354 (Fed. Cir. 2010)......................................................................................................4

*Andersen Corp. v. Fiber Composites, LLC*,
474 F.3d 1361 (Fed. Cir. 2007)......................................................................................................9

*Brown v. 3M*,
265 F.3d 1349 (Fed. Cir. 2001)....................................................................................................12

*Changzhou Kaidi Elec. Co. v. Okin Am., Inc.*,
No. CIV. CCB-13-1798, 2014 WL 1896730 (D. Md. May 12, 2014)...........................................12

*Continental Circuits LLC v. Intel Corp.*,
915 F.3d 788 (Fed. Cir. 2019)........................................................................................................6

*Data Gen. Corp. v. Johnson*,
78 F.3d 1556 (Fed. Cir. 1996)........................................................................................................8

*Datamize, LLC v. Plumtree Software, Inc.*,
417 F.3d 1342 (Fed. Cir. 2005)....................................................................................................14

*Finjan, Inc. v. Cisco Sys. Inc.*,
2019 WL 452038 (N.D. Cal. Feb. 5, 2019)....................................................................................2

*Gamevice, Inc. v. Nintendo Co.*,
No. 18-CV-01942-RS, 2023 WL 322901 (N.D. Cal. Jan. 19, 2023)..............................................1

*Haptic, Inc. v. Apple, Inc.*,
No. 24-CV-02296-JSC, 2025 WL 82305 (N.D. Cal. Jan. 13, 2025) ..............................................1

*Honeywell Intern., Inc. v. ITT Industries, Inc.*,
452 F.3d 1312 (Fed. Cir. 2015)......................................................................................................4

*Interval Licensing LLC v. AOL, Inc.*,
766 F.3d 1364 (Fed. Cir. 2014)....................................................................................................14

*Liberty Ammunition, Inc. v. United States*,
835 F.3d 1388 (Fed. Cir. 2016)....................................................................................................13

*Liquid Dynamics Corp. v. Vaughan Co., Inc.*,
355 F.3d 1361 (Fed. Cir. 2004)......................................................................................................1

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
134 S. Ct. 2120 (2014) .................................................................................................................14

*O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd*,
521 F.3d 1351 (Fed. Cir. 2008)................................................................................................1, 11

ii

Gibson, Dunn &
Crutcher LLP

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005)............................................................................................2

*Poly-Am., L.P. v. API Indus., Inc.*,
  839 F.3d 1131 (Fed. Cir. 2016)....................................................................................5, 6, 8

*Radware, Ltd. v. F5 Networks, Inc.*,
  No. 5:13-CV-02024-RMW, 2015 WL 6828273 (N.D. Cal. Nov. 6, 2015) ................................1, 11

*Regents of Univ. of Minnesota v. AGA Medical Corp.*,
  717 F.3d 929 (Fed. Cir. 2013)............................................................................................5

*Samsung Electronics America v. Prisua Engineering*,
  948 F.3d 1342 (Fed. Cir. 2020)........................................................................................13

*SmartPhone Techs. LLC v. HTC Corp.*,
  No. 6:10-CV-580 LED-JDL, 2013 WL 1136972 (E.D. Tex. Mar. 18, 2013) ...............................12

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
  844 F.3d 1370 (Fed. Cir. 2017)........................................................................................13

*Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*,
  789 F.3d 1335 (Fed. Cir. 2015)........................................................................................13

*Trs. of Columbia Univ. in N.Y. v. NortonLifeLock, Inc*,
  2019 WL 7040931 (E.D. Va. Dec. 20, 2019) ......................................................................8

*Trs. of Columbia Univ. v. Symantec Corp.*,
  811 F.3d 1359 (Fed. Cir. 2016)......................................................................................8–9

*Uship Intellectual Properties, LLC v. United States*,
  714 F.3d 1311 (Fed. Cir. 2013)........................................................................................10

*Valjakka v. Netflix, Inc.*,
  No. 22-CV-01490-JST, 2022 WL 19975387 (N.D. Cal. Dec. 13, 2022) .......................................1

*Verizon Services Corp. v. Vonage Holdings Corp.*,
  503 F.3d 1295 (Fed. Cir. 2007).......................................................................................4, 5

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996)...........................................................................................1

*X One, Inc. v. Uber Techs., Inc.*,
  440 F. Supp. 3d 1019 (N.D. Cal. 2020) ...........................................................................9, 12

Gibson, Dunn &
Crutcher LLP

**TABLE OF EXHIBITS[1]**

| Exhibit | Description |
|---------|-------------|
| 1 | U.S. Patent No. 7,728,724 |
| 2 | U.S. Patent No. 8,224,355 |
| 3 | Pocketfinder Website (2007) |
| 4 | IPR2022-00879 ('724 Patent IPR) Patent Owner's Preliminary Response ("'724 POPR") |
| 5 | IPR2022-00879 ('724 Patent IPR) Decision Denying Institution ("'724 Denial Decision") |
| 6 | IPR2022-00927 ('355 Patent IPR) Patent Owner's Preliminary Response ("'355 POPR") |
| 7 | IPR2022-00927 ('355 Patent IPR) Ex. 2001 to Patent Owner's Preliminary Response, Declaration of Dr. Eric Koskinen ("Koskinen Decl.") |
| 8 | IPR2022-00927 ('355 Patent IPR) Decision Denying Institution ("'355 Denial Decision") |
| 9 | The New Oxford American Dictionary (2nd ed. 2005) – "alert" |
| 10 | Compact Oxford English Dictionary of Current English (3rd ed. 2005) – "alert" |
| 11 | Collins English Dictionary (7th ed. 2005) – "alert" |
| 12 | The Penguin Complete English Dictionary (2006) – "alert" |
| 13 | The Chambers Dictionary (10th ed. 2006) – "alert" |
| 14 | U.S. Patent Application Publication No. 2007/0281689 ("Altman") |
| 15 | Microsoft Computer Dictionary – "wizard" |
| 16 | PC Mag Encyclopedia – "wizard" |

---

[1] Exhibits 1–21 are attached to the Vincent Declaration in support of the Opening Claim Construction Brief, Dkt. No. 137-1.  Exhibits 22 and 23 are attached to the Vincent Declaration, dated April 1, 2026, in support of this Reply Claim Construction Brief.

iv

Gibson, Dunn &
Crutcher LLP

| Exhibit | Description |
|---------|-------------|
| 17 | Dictionary.com – "wizard" |
| 18 | The Computer Desktop Encyclopedia – "wizard" |
| 19 | Collins English Dictionary – "wizard" |
| 20 | Declaration of Gerry Christensen ("Christensen Decl.") |
| 21 | '724 File History – March 10, 2010 Amendment |
| 22 | IPR2017-01267 (IPR of U.S. Patent No. 8,798,647) Patent Owner's Preliminary Response ("X One POPR") |
| 23 | *X One, Inc. v. Uber Techs., Inc.*, No. 5:16-CV-6050-LHK, D.I. 64 (N.D. Cal. June 30, 2017); ("X One *Markman* brief") |

Gibson, Dunn & Crutcher LLP

## I.    INTRODUCTION

LBT adopts a strategy all too common in patent cases—propose "plain and ordinary meaning" for every term but never actually articulate the purported plain meaning, hoping to present what suits it at the time to the jury.  Courts, especially in this District, have wisely rejected such a strategy.  "Here, if the Court does not construe [a term] or merely states the term has a plain and ordinary meaning, the proper scope of the claim term . . . would improperly go to the jury.  Therefore, the Court must construe the term to resolve this dispute."  *Haptic, Inc. v. Apple, Inc.*, No. 24-CV-02296-JSC, 2025 WL 82305, at *5 (N.D. Cal. Jan. 13, 2025) (citing *O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd*, 521 F.3d 1351, 1360–61 (Fed. Cir. 2008)); *see also Radware, Ltd. v. F5 Networks, Inc.*, No. 5:13-CV-02024-RMW, 2015 WL 6828273, at *3 (N.D. Cal. Nov. 6, 2015) ("express[ing] concern that the parties' experts may have different interpretations of the plain and ordinary meanings"); *Gamevice, Inc. v. Nintendo Co.*, No. 18-CV-01942-RS, 2023 WL 322901, at *3 (N.D. Cal. Jan. 19, 2023) (term must "be construed . . . to prevent this question from being left to the jury"); *Valjakka v. Netflix, Inc.*, No. 22-CV-01490-JST, 2022 WL 19975387, at *10 (N.D. Cal. Dec. 13, 2022) (similar).  A quarterback can only scramble and pump fake so long; eventually he has to commit—or get sacked.

LBT's brief confirms that their "plain and ordinary meaning" arguments seek to further LBT's attempt to broaden the claims beyond the actual alleged inventions supported by the intrinsic record.  Their arguments demonstrate a consistent aversion to the inventors' statements in the specifications and LBT's statements during IPR proceedings regarding, not specific embodiments, but the scope of the alleged inventions as a whole.  The purpose of claim construction is "to resolve disputes about claim terms and to assign a fixed, unambiguous, legally operative meaning to the claim."  *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 355 F.3d 1361, 1367 (Fed. Cir. 2004) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  For terms requiring construction, LBT offers only ambiguity.  For terms that are indefinite, LBT fails to resolve the ambiguity.  Uber respectfully requests that the Court adopt Uber's constructions, which are compelled by the intrinsic and extrinsic evidence, and reject LBT's "avoid construction at all costs" approach.

Gibson, Dunn & Crutcher LLP

## II.    DISPUTED CLAIM TERMS

### A.    "location request" ('724 patent cls. 8, 13)

Ignoring that Uber's construction covers both "individuals and objects," LBT repeatedly challenges Uber's construction because the '724 patent is not limited to tracking individuals, but also covers tracking objects. *See, e.g.*, D.I. 138 ("Br.") at 5 ("Uber identifies no 'clear indication' in any part of the intrinsic record that the patentee intended its claims to be limited to tracking individuals— because none exists."); *id.* ("the Asserted Patents are not limited to tracking specific individuals"); *id.* (the specifications "teach that 'the present invention relates to a system for locating individuals *and objects* with a tracking unit . . . for pinpointing the location of the tracking unit, and thus the individual *or the object*.") (emphasis in original).[2]  As evidenced by a construction that *expressly includes* "objects," Uber has never contended that the patent excludes tracking objects.[3]

LBT's strawman aside, Uber's construction ("request for the location of a specific individual or object") encompasses the full scope of the alleged invention—but no more.  Without Uber's construction, the claims are nonsensical and beyond anything disclosed in the specification.

### 1.  Uber's construction resolves ambiguity and avoids absurd results.

Relying on a single case that rejected a proposed construction as confusing and "nonsensical," LBT argues for a blanket rule that "where the surrounding claim language supplies clear context, no construction is required."  Br. at 5–6 (citing *Finjan, Inc. v. Cisco Sys. Inc.*, 2019 WL 452038, at *7 (N.D. Cal. Feb. 5, 2019)).  But Federal Circuit cases "provide *numerous . . . examples* in which the use of a term within the claim provides a *firm basis for construing the term*."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005).  It is black-letter law that "the claims themselves provide substantial guidance as to the meaning of particular claim terms."  *Id.*  Here, the "particular claim term" at issue— "location request"—only makes sense in the context of the claims if that location request is tied to the specific individual or object to be located.  D.I. 137 ("Uber Br.") at 7.  Indeed, LBT appears to concede the point, arguing that Uber's construction is "redundant" of the overall claim language.  Br. at 6.  But

---

[2] All emphases added unless otherwise specified.

[3] Uber's construction also does not restrict the types of objects that "may be located."  Br. at 7.  The alleged invention can be used to "track many other objects" besides cars and people.  '724 patent at 5:51–57.  But the patent requires that each objects have an associated tracking device, and that the "location request" pertains to a specific individual or object—of whatever type—to be located.

2

Gibson, Dunn & Crutcher LLP

redundancy is precisely why construction is needed—to make *explicit* what LBT concedes is *implicit* and prevent LBT from offering the jury a broader reading at trial.

LBT errs in asserting that "location request" are the "unambiguous words the patentee chose for its invention." *Id.* The reason construction is necessary here is that the words "location request"—standing alone, divorced from the context of the claim—are *not* unambiguous. The words alone do not identify whose or what's location is requested. Failing to link the "location request" to a specific person or object, as Uber proposes, leads to absurd results. For example, a user could send a "location request" for a tracking device associated with one individual or object, but the system could determine and transmit the location of a *different* tracking device associated with a *different* individual or object. In other words, a user could send a location request for their *child's* tracking device, satisfying the explicit language of 13[b]—"a location request." But the system could then transmit a signal (13[c]) to *any* previously associated (13[a]) tracking device (*e.g.*, the family dog's device), activate the GPS circuit in the *dog's* tracking device (13[d]), calculate location data and determine the location of the *dog's* tracking device (13[g], [h], [i]), and inform the parent of the location of the *dog's* tracking device (and thus the dog) (13[j]). Nothing in LBT's unconstrued "plain and ordinary meaning" would exclude this result. Uber's construction avoids this absurdity by making *explicit* the *implicit* (and apparently undisputed) link between the location request and the individual or object to be located.

**2. Locating a tracking device necessarily means locating a specific individual or object.**

LBT argues that Uber's construction excludes embodiments by drawing a false distinction between "*a **tracking device** to be located*, as opposed to the actual individual or object." Br. at 6 (emphasis in original). As Uber noted (Uber Br. at 8), the patent *equates* the two, and LBT does not attempt to argue otherwise. Locating a specific individual or object is what the tracking device is *for*:

> [T]he *present invention* relates to a system *for locating individuals and objects with a tracking unit* using location technologies including a global positioning system (GPS) and a General Packet Radio Service (GPRS) for pinpointing the location of the *tracking unit*, and *thus the individual or the object*.

'724 patent, 1:6–12. And the patent's statement of need regarding determination of individuals believed to be abducted or lost is not directed to any lost person—but to specific persons. *Id.* at 1:13–19. In every embodiment—without exception—the user requests the location of a specific person or

3

object by requesting the location of the tracking device associated with that specific person or object. *See, e.g.*, *id.* at 2:6–31, 3:15–23, 3:30–62, 5:1–15, 5:25–49, 7:21–37.

### 3. Uber's construction relies on the patentee's characterization of the alleged invention.

Contrary to LBT's argument, Uber's construction is not based on *Uber*'s "characterization of the invention's purpose." Br. at 7–8. Rather, Uber's construction is based on the *inventors'* characterization of the "present invention." *See, e.g.*, '724 patent at *id.* at 1:6–12 ("The *present invention* relates to a system *for locating individuals and objects with a tracking unit . . . .*"); *id.* at 3:1–3 ("Broadly, the *present invention* generally provides a system and method for *locating and tracking an individual or an object*."). LBT attempts to run away from these statements, arguing that they "simply describe[] that the invention '***relates*** to a system for locating individuals and objects'" and that they do not include "exclusionary language" present in cases cited by Uber. Br. at 8 (emphasis in original). No such distinction exists in the case law. Indeed, the Federal Circuit has relied on the same characterizations of the "present invention" the patentee used here to limit the claims. *See, e.g.*, *Honeywell Intern., Inc. v. ITT Industries, Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2015) ("This invention *relates* to a fuel filter for use in the fuel line that delivers fuel to a motor vehicle engine."); *Verizon Services Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 n.8 (Fed. Cir. 2007) ("Thus, in one aspect, the present invention *relates* to a localized wireless gateway system."); *American Medical Systems, Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1360–61 (Fed. Cir. 2010) ("The broad recitation" that "'[t]he present invention *relates generally* to'" specific subject matter "supports the plaintiffs' position that the phrase is meant to serve as a label for the invention as a whole.").

### 4. Uber's construction does not conflate identification codes with location requests.

Uber's construction does not "conflat[e]" a user's identification code with a location request. Br. at 7. The patent explains that, in some embodiments, a signal can be sent to a tracking device containing an "identification code" of the "user"—*i.e.*, the person making the request—so the tracking device can determine if the code is "valid." *See, e.g.*, '724 patent, Abstract, 1:52–2:5, 3:39–58, 4:20–25. Thus, a user can make a location request to locate a specific individual or object, but, in these embodiments, unless the user sends a valid identification code, the location will not be returned to the

Gibson, Dunn &
Crutcher LLP

user.  *Id.*  Uber's construction does not even *mention* user identification codes, let alone require that any such user identification code be sent as part of a location request.

## B.   "activating the tracking device" / "activating a global positioning system circuit within the tracking device" ('724 patent cls. 8, 13)

LBT again attempts to run from the patentee's unambiguous statement that "the present invention is *passive*, in that a user *remotely activates* the tracking device" requiring "*[n]o action*" on behalf of an individual being located and tracked.  '724 patent at 3:30–39.  LBT first argues that this disclaimer is merely permissive and that "the tracking device **may** be activated by a remote user."  Br. at 9 (emphasis in original).  But the specification does not include the word "may."  Quite the opposite, it categorically states "the present invention **is** passive."  '724 patent at 3:33–34.

LBT also argues the disclaimer applies only to "activating a tracking device" (as in claim 8), but not to "activating a global positioning system circuit within the tracking device" (as in claim 13).  Br. at 8–9.  Nothing in the description of "the present invention" is so limiting; the description covers *all* claims.  *Regents of Univ. of Minnesota v. AGA Medical Corp.*, 717 F.3d 929, 936 (Fed. Cir. 2013) ("When a patent thus describes the features of the 'present invention' as a whole, this description limits the scope of the invention.") (quoting *Verizon*, 503 F.3d at 1308); *see also Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1137 (Fed. Cir. 2016) ("[C]laim differentiation . . . cannot override clear statements of claim scope found in the specification and prosecution history.").  Indeed, the patentee distinguished "[c]onventional systems" that "require[d] an individual to *manually activate a location system* before signals can be received and transmitted between the individual and a person attempting to locate the individual."  '724 patent at 3:30–39.  It is "activat[ion]" of that "location system"—whether described as a tracking device or a GPS circuit within a tracking device—that must be "passive."  *Id.*  Claim 13 is not exempt from the patentee's description of "the present invention," just because it recites "activation" of a GPS circuit within the tracking device instead of the tracking device generally.

Contrary to LBT's suggestion, the patent does not describe activation of the tracking device and activation of a GPS circuit within the tracking device as "different acts."  Br. at 10.  Some embodiments refer to "activating" the GPS circuit specifically, and others refer to "activating" the tracking device more generally.  '724 patent at 2:7–8, 2:20–21, 6:49, 7:27–28.  But the patents *never*

5

Gibson, Dunn &
Crutcher LLP

discuss activating the GPS circuit *in addition to* activating the tracking device. *Id.* What matters is that the "activation"—whether of the tracking device or the GPS circuit—must be without action by the individual being tracked. Likewise, contrary to LBT's mischaracterization (Br. at 8–9), Figure 4 does not diminish the specification's disclaimer or depict activating the tracking device and the GPS circuitry separately—there is only one "activation" step.

LBT also argues that, just because no action on the part of the person to be tracked is "required," it is still possible that the person to be tracked be "permitted" to activate the tracking device. Br. at 9. This argument ignores the first sentence of the disclaimer: "[T]he system of the present invention *is passive*, in that *a user remotely activates* the tracking device once *the user begins an attempt to locate the tracking device . . . .*" '724 patent at 3:30–39. That is, the applicants purported to invent a passive system, which is activated remotely by a user, not by the individual to be tracked. Certainly, a person to be tracked can manually activate a device themselves—that was what the patentee disparaged in prior art systems. *Id.* But such uses are expressly outside of what the applicants purported to invent.

LBT again mischaracterizes the case law, arguing that disavowal applies "only where the specification makes clear that the invention *excludes* a particular feature." Br. at 10 (emphasis in original). On the contrary, "an inventor may disavow claims *lacking* a particular feature when the specification describes 'the present invention' as *having* that feature" or "when the specification distinguishes or disparages prior art based on the *absence* of that feature." *Poly-Am.*, 839 F.3d at 1136 (citation omitted). The "feature" the prior art allegedly lacked—passive activation, without action by the individual being tracked—is affirmatively part of the "present invention." LBT cites *Continental Circuits LLC v. Intel Corp.*, 915 F.3d 788, 797 (Fed. Cir. 2019) to argue that the disclaimer here is not clear and unmistakable. Br. at 10. There, the patent stated that the invention "*can* be carried out" by a specific process, which was *one* "*way*" of forming a required element. *Cont'l Circuits*, 915 F.3d at 797. Here, the patent does not say that activation "can" be passive, or, as noted, that action "may" not be required by the individual being tracked. Rather, the patentee stated that "the system of the present invention *is passive*, in that a user *remotely activates* the tracking device" and that "[*n*]*o action is required* on the behalf of an individual being located and tracked." '724 patent at 3:30–39. While LBT would prefer that the disclaimer disappear, it does appear, and the public is entitled to rely on it.

Gibson, Dunn & Crutcher LLP

**C.** **"[wherein a latitude and longitude of the tracking device results from/calculating the location data of the tracking device resulting from] a comparison of measurements from gps satellites to the tracking device, measurements of distances between two or more gps satellites, and measurements of relative orientations of the two or more gps satellites, the tracking device, and earth" ('724 patent cls. 8, 13)**

Contrary to LBT's argument, it is not Uber that seeks to "insert" words "chosen by [Uber]" into this limitation. Br. at 12. It was *LBT* that chose and inserted those very words during the IPR, successfully convincing the PTAB to deny institution based them. LBT is estopped from asserting different positions here from those taken at the PTAB.

*LBT convinced the PTAB that the claimed measurements must be used "conjunctively."* LBT did not simply argue that "the primary reference (Mohi) did not teach this element," full stop. Br. at 15. Rather, LBT argued that Mohi did not teach this element *because* "Claim Element 13[H] requires . . . that all three sub-elements be used *conjunctively*," which was "undisclosed by Mohi." Ex. 4 at 16 (emphasis in original). Using each measurement "to *independently* calculate the absolute location of a tracking device" was not sufficient, in LBT's view. *Id.* (emphasis in original). LBT argues that Uber's construction "adds nothing beyond the claim's grammar." Br. at 12 (quotation omitted). On the contrary, Uber's construction—using the very words LBT chose and emphasized, and that the PTAB adopted—eliminates any ambiguity about whether each recited measurement must be used "conjunctively," or merely "independently." LBT argued the former, and the PTAB agreed.[4] Ex. 5 ('724 Denial Decision) at 16–17 (quoting LBT's "conjunctively" argument).

*LBT convinced the PTAB that this element must be performed "without line-of sight."* LBT argues that "without line-of-sight" is an "extra phrase" that does not appear in this limitation (step 13[H]) but appears elsewhere in the claim (in step 13[G]). Br. at 12. That is precisely the point. Notwithstanding that "without line-of-sight" does not appear in this limitation, the PTAB found, based on LBT's arguments, that "calculating [the] location data" of *step 13[H]* must occur "*without line-of-sight between a global positioning system satellite and the tracked device*." Ex. 5 ('724 Denial Decision) at 24 (emphases in original) (internal quotation marks omitted) (citing '724 POPR (Ex. 4) at

---

[4] LBT states that another "reasonable interpretation" of its statements in the IPR is that the prior art "failed to teach" that the three measurement categories be "used together" in a comparison. Br. at 15 n.3. But LBT does not explain how "used together" is different than "used conjunctively," and LBT did not use the word "together" *at all* in the IPR. *See* Ex. 4. The Court should use the word LBT chose and the PTAB adopted—"conjunctively."

7

Gibson, Dunn & Crutcher LLP

18). This phrase is not "superfluous." Br. at 16. It makes clear that step 13[H]—not just step 13[G]—must be performed "without line-of-sight." Indeed, step 13[H] was the *only* element of claim 13 addressed by the PTAB. *See* Ex. 5 at 16–24. Again, *LBT*—not Uber—inserted this "extra phrase" into element 13[H] to successfully convince the PTAB to deny institution. *Id.* at 24.

***Both estoppel and disclaimer apply.*** LBT attempts to sidestep the relevant question by arguing that its positions are not inconsistent, because here and at the PTAB it has asserted "plain and ordinary meaning." Br. at 12–13. It argues that judicial estoppel "cannot apply" because it did not seek a *formal construction*. *Id.* at 15. But the label LBT affixed to its position is irrelevant. What matters is the substance of the position LBT advanced. At the PTAB, LBT made clear what the claims require. But here, LBT avoids that clarity, hoping to evade the inconsistency. LBT cannot successfully advance clear, substantive positions about the claims' meaning at the PTAB and then shield those positions here behind a "plain meaning" label. The case law expressly contradicts LBT's narrow view of estoppel.

The question for estoppel is whether the "particular position" taken in both proceedings is inconsistent. *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996). What matters are the *positions* LBT successfully advanced regarding what this element requires—not whether it was called "plain meaning." LBT argued that "Claim Element 13[H] requires . . . that all three sub-elements be used *conjunctively*" (Ex. 4 at 16), and now it argues that element 13[H] does not. LBT argued that step 13[H], not just step 13[G], must be performed "without line-of-sight" (*id.* at 18), and now it argues the opposite. These are exactly the types of inconsistent positions estoppel is meant to preclude.

Indeed, the court in *Trs. of Columbia Univ. in N.Y. v. NortonLifeLock, Inc.* applied estoppel where "the Parties dispute[d] the plain and ordinary meaning" and the estoped party successfully argued at the PTAB that the phrase should have its "plain meaning." 2019 WL 7040931, at *3 n.6 (E.D. Va. Dec. 20, 2019). After convincing the PTAB to adopt narrow claim interpretations to avoid invalidity, whether called "plain meaning" or something else, judicial estoppel precludes LBT from gaining an "unfair advantage" here by asserting contrary *positions* to prove infringement "[n]ow that its interests have changed." *Id.* at *6.

Nor is a formal construction required for prosecution disclaimer. "While disavowal must be clear and unequivocal, it need not be explicit." *Poly-Am.*, 839 F.3d at 1136 (citing *Trs. of Columbia*

*Univ. v. Symantec Corp.*, 811 F.3d 1359, 1363–64 (Fed. Cir. 2016)).  Indeed, the *X One* court applied prosecution disclaimer based on the patentee's statements in IPR proceedings to distinguish prior art, even though the patentee argued the "plain meaning" should apply in both the IPR and district court. *X One, Inc. v. Uber Techs., Inc.*, 440 F. Supp. 3d 1019, 1044–1045 (N.D. Cal. 2020); Ex. 22 (X One POPR) at 5–10; Ex. 23 (X One *Markman* brief) at 21.

Moreover, even if LBT made *other* arguments that the PTAB also adopted (Br. at 13), disclaimer still applies.  *Id.* at 1046 ("'[A]n applicant's argument that a prior art reference is distinguishable on a *particular ground* can serve as a disclaimer of claim scope even if the applicant distinguishes the reference on *other grounds* as well.'") (emphasis in original) (quoting *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1374 (Fed. Cir. 2007)).  The Federal Circuit has applied prosecution disclaimer even where, unlike here, the patentee's statement was "unnecessary to overcome the reference and [where] the examiner explicitly disagreed with it." *Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1336 (Fed. Cir. 2011).  Here, LBT's clear and unequivocal statements, relied on by the PTAB, support both judicial estoppel and disclaimer.[5]

**D.    "graphical mapping tiles . . . from multiple mapping service providers" ('355 Patent cl. 1)**

LBT takes the remarkable position that, when it repeatedly used the word "integrate" to successfully convince the PTAB to deny institution, it did not mean to "limit the claims."  Br. at 16. LBT argues that when it told the PTAB that "*seamlessly integrat[ing]* mapping tiles from more than one mapping service provider" was "a *point of innovation*" missing from the prior art, it did not mean the claims actually require that point of innovation.  *Id.* at 17.  LBT contends that when its expert said that the "multiple [map] providers" required by this element "necessitate *integration* between those providers" (Ex. 7, ¶ 67), he did not really mean it.  When he said that "the existence of multiple mapping service providers does not render obvious a method *that integrates graphical mapping tiles in the specific manner of claim 1*" (*id.* ¶ 107), he was merely discussing a non-limiting "embodiment."  Br. at 17 n. 5.  LBT's arguments are not credible.  Contrary to LBT's revisionist history, LBT and its expert

---

[5] LBT argues "Uber cites to no case where judicial estoppel applied from an IPR decision denying institution."  Br. at 13.  But Uber cited several cases applying estoppel or disclaimer based on statements to the PTAB, including during an IPR.  Uber Br. at 16.  LBT provides no argument for why a decision denying institution—an *unappealable* decision that disposes of the IPR—should be treated differently than any other PTAB decision.

relied on "integration" of mapping tiles from multiple service providers *dozens of times* to distinguish the prior art, and the PTAB relied on those arguments. *See* Uber Br. at 18–20.

LBT mischaracterizes its central argument before the PTAB, stating that it merely argued that "the prior art—which disclosed only single-provider systems—failed to render obvious a method using multiple providers." Br. at 17. In reality, the issue was *not* simply whether single-provider prior art rendered obvious a multiple-provider claim. LBT framed the issue to the PTAB very differently:

> [W]hether the *mere existence of multiple mapping service providers* renders obvious a method that *integrates* graphical mapping tiles from multiple mapping service providers and *enables a user to reposition graphical mapping tiles* from those multiple providers, and does so without re-accessing the websites of the mapping service providers.

Ex. 6 ('355 POPR) at 1, 17. LBT's expert conceded that the prior art disclosed "*the existence of multiple mapping service providers*," just not their "*integration into a single location tracking interface*." Ex. 7 at ¶ 73. The "point of innovation" was *not* simply "the use of multiple providers at all." Br. at 17. It was, in LBT's words, the "seamless integration" of mapping tiles from multiple providers into allowing a user to "reposition" tiles from multiple sources. *See* Uber Br. at 17–19.

LBT notes that "even the dissenting ALJ agreed that the claim 'recites nothing about how map data from different service providers is integrated.'" Br. at 18. But that is why he was the *dissenting* ALJ—he *disagreed* with LBT's position and would have *instituted* IPR based on the prior art's disclosure of "multiple different commercially available mapping sources" and "receiving mapping-related information from multiple sources." Ex. 8 (Dissent) at 2, 3. LBT now asks this Court to adopt the very position the LBT advanced and the dissenting ALJ *rejected*. This is precisely the kind of inconsistency both judicial estoppel and prosecution disclaimer are designed to prevent.[6]

**E.    "alert message" ('355 Patent cl. 1)**

LBT's argument rests entirely on a straw man—that Uber's construction "require[s] danger." Br. at 19; *see also id.* at 20 (stating that Uber attempts to "define the universe of alerts as limited to dangerous events"); *id.* (stating that Uber seeks a "limiting construction that all alerts must involve

---

[6] LBT argues that one embodiment describes "integrating mapping tiles," while another embodiment does not. Br. at 18. LBT ignores that prosecution disclaimer can "result in that embodiment not being covered by the claims" where the patentee has disclaimed that embodiment. *Uship Intellectual Properties, LLC v. United States*, 714 F.3d 1311, 1316 (Fed. Cir. 2013).

10

danger"); *id.* at 21 (the extrinsic evidence does "not limit 'alert' solely to dangerous situations"). Uber agrees that an "alert message" is "not limited to dangerous events." *Id.* at 20. That is why Uber's construction explicitly *includes* "breach conditions," which, as Uber expressly stated, involve violations of "parameters" a user has "predefined," such as exceeding a "maximum speed limit" or a "tracking device moving beyond a preset geographic boundary." Uber Br. at 22 (citing '355 patent, 8:54–56, 11:17–19, 11:34–54; 12:23–26). These are the examples LBT erroneously argues Uber's construction excludes. Br. at 20. LBT's caricature aside, Uber's construction captures the full scope of "alert message" as supported by the intrinsic and extrinsic evidence.

LBT faults Uber for not seeking construction this term in the IPR. Br. at 19. But courts and the PTAB "are not (and should not be) required to construe *every* limitation present in a patent's asserted claims." *O2 Micro*, 521 F.3d at 1362 (emphasis in original) (citation omitted). Rather, claim construction is only necessary "[w]hen the parties present a fundamental dispute regarding the scope of a claim term." *Id.* Construction was unnecessary in the IPR to resolve any dispute—the prior art expressly disclosed "[m]essaging and alert functions." Ex. 8 at 16. And, as LBT explained there, "a POSITA would understand that an alert message has time sensitivity." Ex. 7 at 32. But here, the parties *do* dispute the meaning of this term. Like it does for all terms, LBT argues for "plain and ordinary meaning," without identifying any meaning. Br. at 19–21. Nor does LBT explain how Uber's construction deviates from the plain meaning, other than its erroneous statement that Uber's construction requires danger. *Id.* Here, simply asserting "plain and ordinary meaning" is "inadequate" because it "does not resolve the parties' dispute." *O2 Micro*, 521 F.3d at 1361.

**F.    "wizard menu" ('355 patent cl. 1)**

LBT argues that its unarticulated "plain and ordinary meaning" should be adopted for this term because it is "a term of art that a POSITA would understand." Br. at 21. But just because a *POSITA* would understand the term does not mean a *jury* would. Courts have "adopt[ed] plain and ordinary meaning constructions . . . premised on the parties' agreement that the terms are *non-technical terms* that can be *readily understood* and *will not require specialized explanations from experts at trial*." *Radware*, 2015 WL 6828273, at *3. Here, the parties agree that "wizard menu" *is* a technical term. Where the meaning of a term is not "readily apparent" and "appears to have a specialized meaning

Gibson, Dunn &
Crutcher LLP

within the art," it "requires construction." *Changzhou Kaidi Elec. Co. v. Okin Am., Inc.*, No. CIV. CCB-13-1798, 2014 WL 1896730, at *3 (D. Md. May 12, 2014); *see also SmartPhone Techs. LLC v. HTC Corp.*, No. 6:10-CV-580 LED-JDL, 2013 WL 1136972, at *11 (E.D. Tex. Mar. 18, 2013) (construing "native" because it "is a term of art that the trier of fact would likely not understand without guidance"); *cf. Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001) (giving the word "or" its plain meaning, reasoning that it is not a "term[] of art" and "do[es] not require elaborate interpretation"). Being a "term of art" counsels in *favor* of construction, not against it.

LBT complains that Uber did not adopt any one of the dictionary definitions verbatim. Br. at 21. Uber carefully crafted a construction that is fully consistent with all of the definitions and adheres to the intrinsic record. Uber Br. at 24. Ironically, LBT argues that while a jury will have no problem understanding "wizard menu," a technical term of art, it will somehow be confused by common English words like "prompts," "sequence," and "series." Br. at 22. Those words provide a straightforward definition to the term (and, in the case of "prompts," comes straight from the specification). *See* '355 patent at 8:37 (a wizard menu "prompts" a user to enter information). Consistent with Uber's construction, LBT itself explains that the "wizard menu" is a "guided interface" the "enables the user to configure settings (e.g., mapping, alert, and account settings). Br. at 2–3.

Contrary to LBT's argument, "adopting plain meaning" is *not* "a construction" (Br. at 21) where "the parties disagree as to the plain and ordinary meaning of that term." *X One*, 440 F. Supp. 3d at 1033. Indeed, *X One* involved the situation where the court had to construe a claim term at summary judgment because the parties disputed the "plain meaning." *Id.* There is no need to wait. If LBT had a better definition for this term, it should have proposed it. Because this term needs construction, the Court should adopt the only construction before it—Uber's.

## III.  INDEFINITE CLAIM TERMS

### A.  "reference signal to triangulate location information utilizing a first transmitter/receiver station and a second transmitter/receiver station" ('724 patent cl. 13)

LBT argues that "reference signal" is "not a term of degree that must be compared to a baseline." Br. at 23. Quite the opposite, a "reference" signal, *by definition*, must be a signal in "reference" to *something*. Ex. 20 (Christensen Decl.) ¶ 59. And the claim, informed by the intrinsic

12

Gibson, Dunn & Crutcher LLP

record, is wholly silent as to what that "something" is, rendering the claim indefinite. *See Liberty Ammunition, Inc. v. United States*, 835 F.3d 1388, 1395–96 (Fed. Cir. 2016).

LBT and its litigation expert, Dr. Jones, recite seemingly arbitrary elements of claim 13 to argue they provide "context" for the reference signal. Br. at 23. But nowhere does LBT or its expert explain what that context is, or how these elements shed any light on what the claimed "reference signal" means. *Id.* LBT's reliance on its IPR expert, Dr. Miller, fares no better. *Id.* In fact, Dr. Miller's testimony further demonstrates indefiniteness, an issue he did not address.[7] As Uber's expert here, Dr. Christensen, explained, Dr. Miller opined in the IPR that the prior art (Mohi) did not disclose "the *type* [of] reference signal disclosed by the '724 Patent." Ex. 20 (Christensen Decl.) ¶ 63. The fundamental problem is that there is no "type" of reference signal disclosed by the '724 patent *at all*. *Id.* Dr. Miller arbitrarily excluded Mohi's reference signal as being of the wrong "type," but cited nothing in the intrinsic record to support his arbitrary distinction. *Id.*

Contrary to LBT's contention (Br. at 24), just because the parties' experts disagree does not preclude a finding of indefiniteness. "A party cannot transform into a factual matter the internal coherence and context assessment of the patent simply by having an expert offer an opinion on it." *Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1342 (Fed. Cir. 2015) (finding "molecular weight" indefinite despite competing expert testimony). The specification here provides no guidance, "one of ordinary skill has no way of knowing what constitutes the claimed 'reference signal' and what does not." Ex. 20 (Christensen Decl.) ¶ 63.

**B.** **"without direct line-of-sight between a global positioning system satellite and the tracked device" / "without line-of-sight between a global positioning system satellite and the tracked device" ('724 patent cls. 8, 13)**

The parties agree that indefiniteness turns on whether the intrinsic record "'provide[s] enough certainty to one of skill in the art when read in the context of the invention.'" Br. at 25 (quoting *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017)). The question is whether the intrinsic record here provides that certainty. LBT cites a single passage in the specification, arguing that "'without line-of-sight' would be understood by a POSITA to include situations where using solely

---

[7] The PTAB may not institute an IPR or cancel claims based on indefiniteness in an IPR proceeding. *Samsung Electronics America v. Prisua Engineering*, 948 F.3d 1342, 1350 (Fed. Cir. 2020).

13

Gibson, Dunn & Crutcher LLP

GPS to locate an individual or object may be *difficult* due to interference with line-of-sight communications by, for example, building structures that reside in the line of sight between the GPS satellite and the individual or object." Br. at 25–26 (citing '724 patent at 1:37–44). LBT replaces one indefinite phrase with another; it is how that "difficulty" is resolved that the claims leave unstated.

Just as "without line-of-sight" is an indefinite term of degree, whether something "may be difficult" is also a term of degree that depends on the "unpredictable vagaries of any one person's opinion"—just as the Federal Circuit warned against. *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) (quoting *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005)). Simply saying that determining location is "difficult" provides no "objective boundaries for those of skill in the art." *Id.* (citing *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2130 n.8 (2014)). LBT highlights the problem by arguing this term covers situations in which "some degree" of line-of-sight communication "may be lacking." Br. at 25. What "degree" of obstruction is required is unknown. The '724 patent provides no guidance on how "difficult" determining location must be, or what "degree" of obstruction is necessary, before concluding there is no "line-of-sight" or "direct line-of-sight."[8] The fact that LBT and its expert are unable to articulate any objective boundaries of this term demonstrates its indefiniteness.

## C.    "transmitting the location data" ('724 patent cl. 13)

LBT argues that it is clear what "location data" is "transmitted" in the penultimate step of claim 13 (Br. at 27), but its own explanation exposes the ambiguity in the claim. According to LBT, "[t]he data flow is sequential and cumulative—GPS data is calculated first, then refined using transmitter/receiver station signals—and the combined result is 'the location data' that is transmitted." *Id.* The problem for LBT is that this description does not match either the claim or the specification.

Indeed, it is the *first* calculation step in claim 13 that involves transmitter/receiver station signals, *followed* by a *second* calculation step involving only GPS signals—the direct inverse of the

---

[8] LBT refers to an Uber article referring to "line of sight" seeming to suggest that Uber's use of the term means it cannot be indefinite. Br. at 25. As LBT notes, it is not "line of sight" that renders the claim indefinite. *Id.* It is the fact the patent here provides no objective boundaries for the degree of obstruction required for something to be "without" line-of-sight.

14

Gibson, Dunn & Crutcher LLP

sequence LBT argues the claim so "clearly" provides. '724 patent at 9:61–10:4 (first calculation step), 10:5–10 (second calculation step); Br. at 27.

Moreover, nowhere does the claim or specification discuss "refining" location data calculated using GPS signals with location data calculated using transmitter/receiver station signals. Figure 3, for example, discusses three calculation steps (S216, S220, S224) but says nothing about "combining" their results or transmitting them anywhere, individually or collectively. '724 patent at 7:8–20, Fig. 3. Moreover, Figure 4 *expressly contradicts* LBT's "sequential" flow. LBT (correctly) states that "Figure 4 shows transmitting location data to the monitoring station at step S314." Br. at 28. But LBT ignores that this transmitted location data is derived *only from a GPS signal*—Figure 4 depicts calculating location data from a GPS signal (S312), immediately transmitting that location data to a monitoring station to determine a location (S314), and then informing the user of the location (S316). *Id.* at 7:31–37, Fig. 4. Only *after* this transmission has occurred is *another* calculation step performed using a transmitter/receiver station signal (S320), and, again, there is no discussion of combining this result with the GPS-derived location data or transmitting the results (combined or otherwise) anywhere. *Id.* LBT's purported sequential "flow" would exclude this embodiment—the only one that discusses "transmitting" location data at all.

LBT argues that "a POSITA would understand that the claimed method *can* include transmitting data from multiple sources." Br. at 28. But this avoids the critical issue—does the claim *require* transmitting data from *multiple* sources, or just *one* source—and, if the latter, which one? Neither the claim nor the specification provides any guidance. LBT argues that claim 13 "describes a single location determination refined through successive calculations." Br. at 28. Again, not a single line of the specification supports this assertion. The specification unambiguously discloses multiple calculation steps using different methods, and it never discusses combining or refining their results, let alone transmitting those combined results anywhere. '724 patent at 7:8–37, Figs. 3, 4. That LBT cannot articulate a coherent explanation that actually matches the claim language and specification is itself the strongest evidence of indefiniteness.

Gibson, Dunn & Crutcher LLP

Date: April 1, 2026                          Respectfully submitted,


                                             */s/ Robert A. Vincent*
                                             Mark N. Reiter (Texas Bar No. 16759900)
                                             Admitted *pro hac vice*
                                             mreiter@gibsondunn.com
                                             Robert A. Vincent (Texas Bar No. 24056474)
                                             Admitted *pro hac vice*
                                             rvincent@gibsondunn.com
                                             Ashbey N. Morgan (Texas Bar No. 24106339)
                                             Admitted *pro hac vice*
                                             anmorgan@gibsondunn.com
                                             **GIBSON, DUNN & CRUTCHER LLP**
                                             2001 Ross Avenue, Suite 2100
                                             Dallas, TX 75201-6912
                                             Telephone:  (214) 698-3100
                                             Fax:  (214) 571-2907

                                             Andrew W. Robb (#291438)
                                             arobb@gibsondunn.com
                                             **GIBSON, DUNN & CRUTCHER LLP**
                                             310 University Avenue
                                             Palo Alto, CA 94301-1744
                                             Telephone:  (650) 849-5300
                                             Fax:  (650) 849-5034

                                             *Attorneys for Defendant Uber Technologies, Inc.*

Gibson, Dunn & Crutcher LLP

DEFENDANT UBER TECHNOLOGIES, INC.'S REPLY CLAIM CONSTRUCTION BRIEF
CASE NO. 3:22-CV-03985-RFL

**CERTIFICATE OF SERVICE**

A copy of the foregoing document was electronically filed with the Court this 1st day of April, 2026.  Notice of this filing will be sent by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ *Robert A. Vincent*

Gibson, Dunn &
Crutcher LLP