Michael J. Newton (CA 156225)
mike.newton@alston.com
**ALSTON & BIRD LLP**
755 Page Mill Road
Building C, Suite 200
East Palo Alto, CA 94304
Telephone: (650) 838-2000
Facsimile: (650) 838-2001

*Attorney for Plaintiff LBT IP II LLC.*
Additional Counsel Listed on the Signature Page

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LBT IP II LLC, <br><br> Plaintiff, <br><br> v. <br><br> Uber Technologies, Inc., <br><br> Defendant. <br><br>―――――――――――― <br><br> Uber Technologies, Inc., <br><br> Counter-Claimant, <br><br> v. <br><br> LBT IP II LLC, <br><br> Counter-Defendant. | Case No. 3:22-cv-03985-RFL <br><br><br> **LBT IP II LLC'S RESPONSE IN OPPOSITION TO UBER'S MOTION FOR JUDGMENT ON THE PLEADINGS FOR PATENT-INELIGIBLE SUBJECT MATTER UNDER 35 U.S.C. § 101** <br><br><br> **Hearing:** <br> Date: May 21, 2026 <br> Time: 9:00 a.m. <br> Place: 450 Golden Gate Avenue <br> San Francisco, CA 94102 <br> Judge: Hon. Rita F. Lin |

LBT'S RESPONSE TO UBER'S MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 3:22-cv-03985-RFL

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................................. 1

II.     STATEMENT OF THE ISSUES TO BE DECIDED................................................................. 2

III.    STATEMENT OF THE FACTS ............................................................................................. 2

IV.     ARGUMENT...................................................................................................................... 3

        A.      Uber failed to show judgment on the '724 Patent pleadings is appropriate. ...................... 4

        B.      Uber failed to show judgment on the '355 Patent pleadings is appropriate. ................... 10

V.      CONCLUSION.................................................................................................................. 15

LBT'S RESPONSE TO UBER'S MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 3:22-cv-03985-RFL

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018)................................................................................3

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
   841 F.3d 1288 (Fed. Cir. 2016)................................................................................7

*BASCOM Global Internet Servs. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016)........................................................................6, 7, 8

*In re Bd. of Trs. of Leland Stanford Junior Univ.*,
   991 F.3d 1245 (Fed. Cir. 2021)................................................................................9

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018)......................................................................4, 6, 10

*Beteiro, LLC v. DraftKings Inc.*,
   104 F.4th 1350 (Fed. Cir. 2024) ..............................................................................6

*Blackbird Tech LLC v. Niantic, Inc.*,
   No. 17-cv-1810, 2018 WL 5630452 (D. Del. Oct. 31, 2018)..............................4, 11

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
   880 F.3d 1356 (Fed. Cir. 2018)......................................................................1, 10, 11

*Diamond v. Diehr*,
   450 U.S. 175 (1981)............................................................................................8, 15

*Elec. Power Group, LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)..........................................................................6, 12

*Encyclopaedia Britannica, Inc. v. Dickstein Shapiro LLP*,
   128 F. Supp. 3d 103 (D.D.C. 2015) ....................................................................12, 13

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016)............................................................................2, 4

*Enovsys LLC v. Uber Techs., Inc.*,
   No. 23-cv-04549, 2024 WL 3033995 (N.D. Cal. June 17, 2024)............................6

*Geoscope Techs. PTE. Ltd. v. Google LLC*,
   No. 2024-1003, 2025 WL 1276235 (Fed. Cir. May 2, 2025)..................2, 5, 11, 12

*GoTV Streaming, LLC v. Netflix, Inc.*,
   166 F.4th 1053 (Fed. Cir. 2026) ...........................................................................2, 5

LBT'S RESPONSE TO UBER'S MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 3:22-cv-03985-RFL

*IBM v. Zillow Grp., Inc.*,
50 F.4th 1371 (Fed. Cir. 2022) ................................................................2, 5, 6, 12

*Innovaport LLC v. Target Corp.*,
No. 2024-1545, 2026 WL 321266 (Fed. Cir. Feb. 6, 2026) ...........................2, 5, 11

*Internet Patents Corp. v. Active Network, Inc.*,
790 F.3d 1343 (Fed. Cir. 2015)..........................................................................4, 12

*Local Intelligence v. HTC America*,
No. 5:17-CV-06437-EJD, 2018 WL 1697127 (N.D. Cal. Apr. 6, 2018)................11

*Maxell Ltd. v. Huawei Device USA Inc.*,
No. 5:16-CV-00178, 2018 WL 4179107 (E.D. Tex. March 29, 2018) ...................8

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016)..............................................................................4

*Move, Inc. v. Real Est. All. Ltd.*,
721 F. App'x 950 (Fed. Cir. 2018) ........................................................................12

*Recentive Analytics, Inc. v. Fox Corp.*,
134 F.4th 1205 (Fed. Cir. 2025) .............................................................................6

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
65 F.4th 698 (Fed. Cir. 2023) .................................................................................6

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018)...............................................................................9

*SiRF Tech., Inc. v. ITC*,
601 F.3d 1319 (Fed. Cir. 2010)...............................................................................9

*X One, Inc. v. Uber Techs., Inc.*,
239 F. Supp. 3d 1174 (N.D. Cal. 2017) .................................................7, 8, 10, 14

## GLOSSARY OF TERMS AND CONVENTIONS

| TERM | DEFINITION |
|---|---|
| The '355 patent | U.S. Patent No. 8,224,355 |
| The '724 patent | U.S. Patent No. 7,728,724 |
| "Br." | Uber's Motion for Judgment on the Pleadings, Dkt. 139 |
| The "Asserted Patents" | The '355 and '724 patents |
| "IPR" | *Inter Partes* Review |
| "LBT" | Plaintiff LBT IP II LLC |
| "Uber" | Defendant Uber Technologies, inc. |

## I.    <u>INTRODUCTION</u>

Uber's Rule 12(c) motion fails because it overgeneralizes LBT's patents to the point of unrecognition. At *Alice* step one, both patents are directed to concrete technological improvements; at step two the claims plausibly recite non-conventional arrangements of components. Uber's failure to invalidate the same claims in multiple IPRs further corroborates—at a minimum—that its "routine and conventional" contentions are fact-bound and inappropriate for resolution on the pleadings. At this stage, the Court must accept well-pleaded facts and reasonable inferences in LBT's favor, and disputed issues of conventionality cannot be resolved on this Rule 12(c) record. As such, the Court should deny Uber's motion.

*First*, the '724 Patent. Before LBT's invention, location tracking technology faced a technical limitation where conventional tracking systems relying on satellites (*e.g.*, GPS) generally functioned only in outdoor, line-of-sight uses, but had difficulty accurately locating an individual or object where the signals were obstructed by large structures or geographical features (*e.g.*, tall buildings or mountains). *See* Dkt. 1-1 ('724 Patent) at 1:37–47. The '724 Patent addressed, and solved, these issues through specific, technical solutions, not abstraction: it recites claim-defined operations for computing location data when GPS line-of-sight is obstructed. The claims require the use of specific signal-receipt, comparison, and computation steps performed under a without-line-of-sight constraint. That is a particular "how," not a results-oriented recitation of "displaying location." The Federal Circuit in *Thales* confirmed that claims that recite specifically "how" location data is collected and used through a particular configuration of components and signals, such as those of the '724 Patent, are not abstract.

*Second*, the '355 Patent solved technical challenges for efficiently managing data within a user interface. It claims a specific way to handle and present map content from more than one provider within a single interface: "graphical mapping tiles … from multiple mapping service providers" coordinated by a "wizard menu" that allows a user to reposition tiles without re-accessing their source. *See* Dkt. 1-4 ('355 Patent) at 24:14–44. That is more than "providing, arranging, and presenting" information; it claims how a user interface manages multi-provider map tiles. Courts, including the Federal Circuit in *Core Wireless*, routinely find that similar claims directed to a particular manner of improving the management and presentation of information on electronic devices, including mapping information, are not abstract.

LBT'S RESPONSE TO UBER'S MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 3:22-cv-03985-RFL

Uber over-generalizes the '724 Patent as merely "displaying a location derived from calculations performed on collected data" and the '355 Patent as merely "providing, arranging, and presenting requested location information through a graphical map." But Uber's contrary framing abstracts the claims away from their operations and constraints—precisely what *Enfish* cautions against. Moreover, Uber's reliance on cases like *GoTV* (result-oriented claims), *Innovaport* (merely requesting, querying, and displaying elements), *Geoscope* ("bereft of how"), and *IBM* (merely organizing and displaying information) is misplaced because those claims invoked generic computers to achieve abstract results, while LBT's claims recite how to solve technical problems through defined signal processing and a wizard-controlled, multi-provider tiling workflow. Uber's motion should be denied at both step one, because both LBT patents are directed to concrete technological improvements, and, to the extent the Court reaches it, also step two, because the claims recite non-conventional arrangements.

## II.    STATEMENT OF THE ISSUES TO BE DECIDED

Whether, Uber has carried its burden to show as a matter of law that the asserted '724 and '355 Patent claims are (a) "directed to" an abstract idea at *Alice* step one and (b) lack any plausible inventive concept at *Alice* step two such that alleged conventionality may be resolved against LBT on the pleadings.

## III.    STATEMENT OF THE FACTS

***'724 Patent***: The inventors of LBT's patents recognized a technical limitation in existing location technology: the inability to compute location data for a tracking device when GPS line-of-sight is obstructed. The inventors understood that GPS technology, while useful, was "generally limited to outdoor, line-of-sight uses." Dkt. 1-1 ('724 Patent) at 1:37–38. Conventional systems depended on "maintaining direct outdoor line-of-sight between a global positioning system (GPS) satellite and a tracked object." *Id*. at 3:24–26. As a result, finding the location of any object was "difficult, or impossible for an indoor location or a location that is obstructed by a large structure (such as a tall building, a bridge, a dam, and the like) or geographical features (such as a mountain, a hill, a valley, a canyon, a cliff, and the like)." *Id*. at 1:40–47.

The inventors thought it would be advantageous to provide a system that could compute location data for a tracking device "that may be located indoors or at a site that is outside the line-of-sight." *Id*. at 1:47–49; *see also id.* at 3:24–26. The '724 Patent overcomes prior limitations by combining GPS with

2

transmitter/receiver stations that provide an alternative service for location determination. *Id*. at 7:7–20; *see also* Dkt. 1 (Complaint) at ¶ 45. Specifically, the claimed system may, for example, receive signals from a first transmitter/receiver station and a second transmitter/receiver station, calculate location data from the general packet radio service (GPRS) signals received from these stations, and use that data—together with, or in lieu of, GPS data—to determine the location of the tracked object. *Id*. at 8:57–9:12; 4:55–5:27.

**'355 Patent**: The inventors of LBT's patents recognized a further limitation in existing mapping technology: the inability to provide continuous, responsive mapping services when users depended on a single mapping provider. Dkt. 1-4 ('355 Patent) at 3:60-4:5. Even where conventional location systems could establish a GPS fix, the user interfaces for presenting that information were fragmented and inefficient. *Id*. at 3:60-4:5; 15:37-47. Users seeking location data on a map had to access individual mapping-service-provider websites separately, incurring higher costs and bandwidth consumption. *Id.* at 20:18–35. The prior art systems created points of failure: if the single provider became unavailable, the user had no alternative. Further, bandwidth consumption was excessive because tiles had to be repeatedly downloaded, while response times were slow because each repositioning required a new connection to the provider's server. *Id*.

The '355 Patent addresses this by providing a graphical mapping module that aggregates mapping tiles from multiple service providers into a unified interface, enabling "improved bandwidth responsiveness over conventional single mapping systems." *Id*.; *see also* Dkt. 1 (Complaint) at ¶ 54. The invention also includes a wizard menu that allows users to reorient the map display without re-accessing their source, providing intuitive controls for monitoring tracked objects. *Id.* at 8:35–55; 20:57–21:5. The invention further includes specific alert messages provided to the user. *Id.* at 4:44–48, 8:30-34. This combination of multi-provider aggregation, wizard menu controls, and alert messages represents a specific technological improvement over prior mapping interfaces.

## IV.    ARGUMENT

At the Rule 12 stage, patent ineligibility may be determined "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). Critically, "whether

3

a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

**A.    Uber failed to show judgment on the '724 Patent pleadings is appropriate.**

*Step One*: The '724 Patent claims are directed to a specific technological solution for computing location data in GPS obstructed environments —not the abstract idea of "determining a location." The specification identifies a concrete technical problem: conventional GPS positioning was "limited to outdoor, line-of-sight uses," making location determination "difficult, or impossible for an indoor location or a location that is obstructed by a large structure." Dkt. 1-1 ('724 Patent) at 1:37–47. The invention "does not require direct line-of-sight" and "effectively locates and tracks individuals and objects in indoor situations." *Id.* at 3:26–29.

The Federal Circuit has consistently distinguished claims that merely recite a desired result from those that specify how that result is achieved. Claims are abstract when they recite only "the effect or result dissociated from any method by which [it] is accomplished." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015). But a claim that "provides specific instructions on how" a function is performed is not abstract. *Blackbird Tech LLC v. Niantic, Inc.*, No. 17-cv-1810, 2018 WL 5630452, at *9 (D. Del. Oct. 31, 2018) (claims not abstract where the claim text specified how mapping into the on-screen environment was performed, as opposed to merely requiring a result); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016) (claims not abstract where "directed to a specific improvement to the way computers operate"); *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) (claims not abstract where "focused on a specific asserted improvement" rather than a results-only directive).

The claims specify how location data is determined in obstructed-GPS conditions through the claim-recited operations and constraints, rather than merely reciting the result. The plain language of the '724 Patent claims rely on specific signals in order to more accurately locate an individual or object and compute location data when GPS line-of-sight is impeded. For example, independent claim 8 recites "calculating location data of the tracking device at least partially in response to communications between at least two transmitter/receiver stations and the tracking device . . . without direct line-of-sight between

4

a [GPS] satellite and the tracked device," and further specifies "wherein a latitude and a longitude of the tracking device results from a comparison of measurements from [GPS] satellites to the tracking device, measurements of the distances between two or more [GPS] satellites, and measurements of the relative orientations of the [GPS] satellites, the tracking device, and earth." Dkt. 1-1 ('724 Patent) at 8:56–9:13.

The claims thus specify *how* location data is computed in obstructed GPS conditions through concrete operations and constraints, rather than merely stating a desired result. In *Thales Visionix Inc. v. United States*, the Federal Circuit held patent-eligible claims that specified a particular sensor configuration and a particular method of using collected data to improve tracking accuracy, explaining that the use of mathematical relationships does not render such claims abstract. 850 F.3d 1343, 1349 (Fed. Cir. 2017). As in *Thales Visionix*, LBT's claims specify a particular configuration of components and signals to improve tracking performance, not the abstract idea of tracking itself. Simply because LBT's claims use location-related mathematical relationships, it does not follow that those claims are abstract. *See id.*

Uber's authorities rely on claims that announce results without the "how" that is recited here. In *GoTV*, the district court had improperly imported limitations from unclaimed embodiments, but the claims themselves were improperly results-oriented without a claimed "how." *GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053, 1061 (Fed. Cir. 2026). But here the "how" is plainly recited by the claim text; this Court need not adopt any limitations from the specification. *Innovaport* affirmed ineligibility where an in-store product-locator claims covered the abstract idea of receiving a request, querying a database, and presenting location suggestions. *Innovaport LLC v. Target Corp.*, No. 2024-1545, 2026 WL 321266, at *8–13 (Fed. Cir. Feb. 6, 2026). Unlike here, there was no technique specified for computing physical coordinates under obstructed-signal conditions. *Id*. *Geoscope* condemned claims "bereft of any specific guidelines on how to perform the basic functions," where the claims merely recited generic steps like "providing calibration data" and "generating one or more sets of grid points" without any specific improvement. *Geoscope Techs. PTE. Ltd. v. Google LLC*, No. 2024-1003, 2025 WL 1276235, at *8–10 (Fed. Cir. May 2, 2025). But unlike *Geoscope*, here the claims identify the specific components that define the claimed operations for computing location data under obstructed GPS conditions. *IBM* held that collecting, organizing, and displaying information is abstract absent a specific improvement to the way

5

technology operates; by contrast, the '724 Patent claims recite the specific signal-and-measurement technique that computes location data in obstructed environments. *IBM v. Zillow Grp., Inc.*, 50 F.4th 1371, 1377–80 (Fed. Cir. 2022). *Beteiro* and *Recentive* likewise involved frameworks that apply location or analytics to business rules absent a technology-improving "how." *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1356 (Fed. Cir. 2024); *Recentive Analytics, Inc. v. Fox Corp.,* 134 F.4th 1205, 1213 (Fed. Cir. 2025). But the '724 Patent provides that "how" in the obstructed-GPS context. *Electric Power Group* rejected claims that merely listed "receiving," "detecting and analyzing," and "displaying" data with no particular technique to perform those functions. *Elec. Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–54 (Fed. Cir. 2016). By contrast, the '724 claims recite particular comparative GPS measurements and the obstructed-line-of-sight constraint, coordinated with transmitter/receiver-station communications, to compute location data. *Sanderling* involved claims that assumed location had already been determined and merely provided information "based on" that location—they did not claim how location is determined. *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 703 (Fed. Cir. 2023). *Enovsys* involved claims directed to "collecting location information," "analyzing the information," and "displaying the results of that analysis"—generic steps with no particular technological improvement. *Enovsys LLC v. Uber Techs., Inc.*, No. 23-cv-04549, 2024 WL 3033995, at *19–20 (N.D. Cal. June 17, 2024).

Thus, Uber's cited cases all share a common deficiency: the claims did not specify how location is determined—they either assumed location was already known or recited only generic steps. At *Alice* step one, the '724 Patent claims are directed to a specific improvement in location-tracking technology—determining location when GPS line-of-sight is obstructed—implemented through claim-recited operations and defined comparative measurement. *See Thales Visionix*, 850 F.3d at 1349. Because the claims recite a concrete technological "how," Uber's Rule 12(c) motion fails at step one.

***Step Two***: Although unnecessary to resolve, the '724 Patent is also eligible under *Alice* step two as it claims nonconventional elements, arranged in a nonconventional manner which provide an inventive concept. Importantly, an inventive concept may be found even when individual components were known, so long as the claims recite a "non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM Global Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349-50 (Fed. Cir. 2016). Whether such an arrangement was "conventional is a question of fact." *Berkheimer*, 881 F.3d at

6

1368. Here, the '724 Patent claims such an inventive ordered combination. The claims address a specific deficiency in prior-art GPS systems—location determination without line-of-sight—through coordinated transmitter/receiver station communications and defined comparative GPS measurement computations. Uber's prior failure to show the '724 claims obvious underscores—at a minimum—that conventionality is fact-intensive and not amenable to resolution against LBT at this stage. Therefore, disputes over whether claim-recited elements or combinations were conventional must be resolved in LBT's favor at step two. *See X One, Inc. v. Uber Techs., Inc*., 239 F. Supp. 3d 1174, 1199 (N.D. Cal. 2017). Uber's motion should be denied.

Uber argues that the '724 Patent merely recites "well-known technology" at step two (Br. at 1) and that "[t]he intrinsic record of the '724 Patent confirms the claims recite nothing more than well-understood, conventional activity" because the specification acknowledges that "GPS technology is often incorporated in conventional location systems" and that GPS and GPRS were "well-known in the art." Br. at 7. From this, Uber concludes that "whether considered individually or as an ordered combination, the claim elements fail to confer an inventive concept." Br. at 8. Uber also contends that the claims "limitations appear in the logical order for implementing the abstract idea" and therefore cannot provide an inventive concept. Br. at 8.

These arguments misapprehend *Alice* step two. The inquiry does not turn on whether individual components were known or whether claim steps follow a logical sequence, but on whether the particular combination of elements is itself inventive—that is, whether it constitutes "a non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM*, 827 F.3d at 1350; *see also Amdocs (Israel) Ltd. v. Openet Telecom, Inc*., 841 F.3d 1288, 1300–01 (Fed. Cir. 2016); *X One*, 239 F. Supp. 3d at 1199.

In *X One*, this Court rejected Uber's step two argument that the location-tracking claims at issue merely combined "generic" components—"wireless devices, cell phones, GPS receivers, a server, software, a database"—performing conventional functions. *Id.* at 1194. This Court held that although GPS receivers and cellular networks were individually known, the claimed *combination*—a dynamic "buddy list" enabling two-way location sharing—constituted a "non-conventional and non-generic arrangement" sufficient for *Alice* step two. *Id.* at 1198–99. Applying Federal Circuit law, this Court recognized that the

7

use of generic components does not foreclose an inventive concept where the claims recite a non-conventional arrangement of known elements. *Id*. at 1197–98 (citing *BASCOM,* 827 F.3d at 1350).

If claims combining known components to enable two-way location sharing can supply an inventive concept, then claims that, as here, recite transmitter/receiver-station communications coordinated with a defined comparative GPS-measurement computation, performed without line-of-sight, plausibly do as well. As *X One* makes clear, the step two inquiry does not ask whether individual components were known; it asks whether their *claimed arrangement* supplies "significantly more" than the abstract idea. *See X One*, 239 F. Supp. 3d at 1198; *BASCOM,* 827 F.3d at 1350.

Another district court rejected Uber's precise argument in *Maxell. See Maxell Ltd. v. Huawei Device USA Inc*., No. 5:16-CV-00178, 2018 WL 4179107, at *21-24 (E.D. Tex. March 29, 2018). There, Huawei argued that claims combining GPS and cellular signals for location determination were directed to "generic computer-based technology" with no features beyond what was "conventional." *Id*. at *21. Huawei contended that the patent "conceded that calculating location based on either GPS or cellular signals was known" and that the patentees "did not invent or improve the technology." *Id*. The court rejected this argument, holding that "the pleadings suggest that the claimed invention is directed to an improvement in the mobile handset itself, not generic components performing conventional activities." *Id*. at *24.

Uber's argument here is materially identical—and should be rejected for the same reasons. Like the *Maxell* patent, the '724 Patent specification acknowledges that GPS and land-based location technologies were known. But also like *Maxell,* the '724 Patent claims a specific combination of those technologies to solve a problem the prior art could not: location determination without GPS line-of-sight. *See* Dkt. 1 (Complaint) at ¶ 45.

Moreover, Uber's statements that GPS and GPRS were "known" conflates the inventive concept inquiry with novelty. That individual components were known does not resolve step two. As the Supreme Court has explained, "a new combination of steps in a process may be patentable even though all the constituents of the combination were well known and in common use before the combination was made." *Diamond v. Diehr*, 450 U.S. 175, 188 (1981); *see also BASCOM*, 827 F.3d at 1350. The '724 Patent does

LBT'S RESPONSE TO UBER'S MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 3:22-cv-03985-RFL

not claim GPS or transmitter/receiver stations in isolation—it claims their specific combination to compute location data without line-of-sight, which prior art GPS systems could not accomplish.

Uber argues that the calculation steps cannot provide an inventive concept because "performing 'mathematical operations' is an abstract concept." Br. at 8. Uber also argues that "a specific or different combination of mathematical steps yields more accurate [results] than previously achievable under the prior art is not enough to transform an abstract idea." Br. at 8. Both arguments mischaracterize the '724 Patent claims.

The '724 Patent does not claim mathematical operations in the abstract. It requires receiving physical signals from GPS satellites and transmitter/receiver stations and calculating location data through a defined comparative measurement framework in obstructed line-of-sight conditions. These real-world signal-based operations distinguish the claims from *SAP* and *Stanford*, which involved abstract mathematical analysis of pre-existing data untethered from any specific physical signal reception or technological system. *See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167-68 (Fed. Cir. 2018); *In re Bd. of Trs. of Leland Stanford Junior Univ.*, 991 F.3d 1245, 1247–48 (Fed. Cir. 2021). And, even if some math is involved, the claims process physical signals to compute location data, not abstract number crunching.

This distinction is why courts have found GPS-based location claims patent-eligible despite involving calculations. In *Thales Visionix*, the Federal Circuit reversed a finding of ineligibility for claims that used mathematical equations to determine orientation based on inertial sensor inputs, holding that the claims were "directed to systems and methods that use inertial sensors in a non-conventional manner to reduce errors" rather than to mathematics in the abstract. 850 F.3d at 1348–49. And in *SiRF*, the Federal Circuit found that GPS receiver claims were patent-eligible because "there is no evidence here that the calculations can be performed entirely in the human mind." *SiRF Tech., Inc. v. ITC*, 601 F.3d 1319, 1332–33 (Fed. Cir. 2010).

The '724 Patent falls squarely within this line of authority. Like *Thales Visionix* and *SiRF*, it claims a system that receives physical signals and processes them to achieve a specific technological result—computing location data without GPS line-of-sight. The mathematical operations are not claimed in isolation; they are inseparable from the physical signal reception that makes them meaningful.

9

LBT'S RESPONSE TO UBER'S MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 3:22-cv-03985-RFL

In short, the '724 Patent claims a specific ordered combination of known components configured in a non-conventional manner to solve a concrete technological problem that prior-art GPS systems could not: determining location without line-of-sight. Whether this arrangement was well-understood, routine, and conventional is also a factual question that cannot be resolved against LBT on a Rule 12(c) motion. *Berkheimer*, 881 F.3d at 1368; *X One*, 239 F. Supp. 3d at 1199. Uber's motion therefore fails at *Alice* step two or, at minimum, cannot be resolved against LBT on the pleadings.

**B.      Uber failed to show judgment on the '355 Patent pleadings is appropriate.**

***Step One***: At *Alice* step one, the asserted '355 Patent claims are directed to providing location information to a user through a method that includes specific concrete steps and operations. For example, the claims of the '355 Patent include user customization through a location management dashboard, graphical mapping module, wizard menu, use of mapping tiles from multiple mapping services, providing alert messages in response to successful user login, and displaying location information. Dkt. 1-4 ('355 Patent), at 24:13-44. Thus, the claims are directed to a particular manner of utilizing mapping data from multiple sources, displaying location information over a user-customizable map using that mapping data, and providing specific alert messages—not just an "abstract idea of providing, arranging, and presenting requested location information" as Uber argues. Br. at 10; *see also Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2018) (finding claims directed to a particular manner of summarizing and presenting information in electronic devices not abstract).

The specification describes a concrete technical solution to a problem that the patent overcomes: the inability to reliably provide continuous, responsive mapping services when users depended on a single mapping provider. Dkt. 1-4 ('355 Patent), Abstract, 4:32–36, 8:47–54, 14:64–16:3, 16:64–17:34. The '355 Patent overcame these issues by providing a graphical mapping module that aggregates mapping tiles from multiple service providers into a unified interface, enabling "improved bandwidth responsiveness over conventional single mapping systems." *Id*. at 20:27–31. The invention also includes a wizard menu that allows users to reorient the map display without re-accessing their source, providing intuitive controls for monitoring tracked objects. *Id.* at 8:35–55; 20:57–21:5. This combination of multi-provider aggregation and wizard menu controls represents a specific technological improvement over prior mapping interfaces, resulting in an improved interface for mapping and location tracking. *See Core Wireless*, 880 F.3d at 1363.

The '355 Patent claims describe *how* this specific improvement to mapping interfaces for electronic devices is done. For example, independent claim 1 recites "a graphical mapping module comprising menu options" and "the menu options comprising one or more tile mapping controls as part of a wizard menu enabling the user to reposition graphical mapping tiles for the one or more groups of tracking devices from multiple mapping service providers." *Id.* at 24:13-44. This claimed graphical mapping module allows users to reorient the mapping interface by repositioning graphical mapping tiles from multiple mapping service providers. *Id*. And, as further claimed, this can be done "without re-accessing the websites of the mapping service providers." *Id*. The claims further include providing both specific alert messages and specific location information. *Id*. As such, the claims recite a specific improvement to mapping interfaces for electronic devices over prior systems and are therefore not abstract. *See Core Wireless*, 880 F.3d at 1363.

Courts routinely find similar patents directed to improved electronic display interfaces eligible under § 101. For example, the Federal Circuit in *Core Wireless* held that a patent claiming an electronic display interface that allows for quicker access to data was not directed to an abstract idea. 880 F.3d at 1362–63. The court explained that "[t]hese limitations disclose a specific manner of displaying a limited set of information to the user, rather than using conventional user interface methods to display a generic index on a computer." *Id.* at 1362. This Court, in *Local Intelligence*, similarly found claims directed to a user interface were not abstract because they recite a specific mechanism for refreshing and presenting information, rather than just the idea of showing relevant information. *Local Intelligence v. HTC America*, No. 5:17-CV-06437-EJD, 2018 WL 1697127, at *6–9 (N.D. Cal. Apr. 6, 2018); *see also Blackbird Tech*, 2018 WL 5630452, at *2–4.

The cases that Uber relies on are inapposite because each involved patents that simply collected, analyzed, and displayed location information. In other words, the patents in Uber's cited cases all lacked the "how" that is recited here. *Innovaport* affirmed ineligibility where an in-store product-locator claims covered the abstract idea of receiving a request, querying a database, and presenting location suggestions. *Innovaport*, 2026 WL 321266, at *8–13. Unlike the '355 Patent claims, there was no specific claimed manner of displaying location information that improved electronic display interfaces. *Id. Geoscope* condemned claims "bereft of any specific guidelines on how to perform the basic functions." *Geoscope*,

11

2025 WL 1276235, at *8–10. Here, the '355 Patent provides specific guidance on how the claimed method is accomplished (e.g., location management dashboard, graphical mapping module, wizard menu, utilizing multiple mapping services). *Zillow* held that collecting, organizing, and displaying information is abstract absent a specific improvement to the way technology operates; by contrast, the '355 Patent claims recite the specific elements that provide the claimed technical improvement to display interfaces. *Zillow*, 50 F.4th at 1377–78. Finally, *Move* involved claims directed to a method for geographically searching real estate that lacked implementation details or technical description. *Move, Inc. v. Real Est. All. Ltd.*, 721 F. App'x 950, 954 (Fed. Cir. 2018). In contrast, the claims of the '355 Patent include specific technical claim elements that detail how the claimed method is implemented (e.g., location management dashboard, graphical mapping module, wizard menu, utilizing multiple mapping services).

Uber's argument that the claims are abstract because they recite functional language is divorced from the actual language of the '355 Patent claims. Claims are abstract when they recite only "the effect or result dissociated from any method by which [it] is accomplished." *Internet Patents*, 790 F.3d at 1348. Here, the claims include concrete elements that provide how the claimed method is accomplished (e.g., location management dashboard, graphical mapping module, wizard menu, utilizing multiple mapping services, providing an alert message). Dkt. 1-4 ('355 Patent), at 24:13-44. Uber does not address these specific claim elements and points only to general "providing" and "displaying" claim language. Br. at 12. While the '355 Patent includes "providing" and "displaying" terms, the rest of the claim language provides, in detail, how the claimed method is accomplished. The concern courts have with functional claim language is that it can result in broadly capturing any manner of achieving the claimed result. *See Elec. Power Grp.*, 830 F.3d at 1356. Such concerns do not apply here because the claims include specific operations and constraints for how the method is accomplished.

Finally, Uber's argument that the claims are abstract because they are directed to "a long a longstanding or fundamental human practice" also fails. Uber points to just one claim element regarding the use of multiple mapping services—claiming this is a longstanding human practice. As discussed above, the claims are directed to much more. *Encyclopaedia Britannica*, which Uber relies on involved a patent that only claimed viewing a map, displaying information on the map, and searching the map. *See Encyclopaedia Britannica, Inc. v. Dickstein Shapiro LLP*, 128 F. Supp. 3d 103, 108 (D.D.C. 2015). The

12

'355 Patent claims are not analogous and instead claim a specific method for customizing a mapping display through a wizard menu, utilizing multiple mapping services, adjusting the mapping display without re-accessing the mapping service, and providing specific alerts and specific location information. All these concrete claim elements provide specifically how the patent solves the problems it identified in the prior art and, as such, the '355 Patent is not directed to an abstract idea.

**Step Two**: Even if the claims were to be found abstract at *Alice* step one, the '355 Patent claims more than just conventional elements arranged in a conventional manner. "Step two is a search for an inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Intellectual Ventures,* 838 F.3d at 1313 (quoting *Alice*, 573 U.S. at 217–18). The claims of the '355 Patent include both nonconventional elements and a nonconventional arrangement of elements that ensures that the patent amounts to significantly more than an abstract idea. For example, claim 1 of the '355 Patent includes (1) a location management dashboard module that comprises a listing of one or more groups of tracking devices the user is capable of monitoring; (2) a graphical mapping module comprising specific menu options for user customization; (3) a wizard menu; (4) utilizing mapping tiles from multiple mapping service providers without re-accessing the map service providers' websites, and (5) providing an alert message. Dkt. 1-4 ('355 Patent), at 24:13-44.

These specific, nonconventional elements solve the problem identified by the patent—namely prior mapping interfaces lacking user flexibility in adjusting mapping area and customizing mapping displays and lacking reliability and efficiency in their use of location data. *See* Dkt. 1 (Complaint) at ¶ 54. For example, the graphical mapping module allows users to customize the interface by repositioning graphical mapping tiles from multiple mapping service providers. Dkt. 1-4 ('355 Patent) at 8:45-50. And, as claimed, this can be done "without re-accessing the websites of the mapping service providers." *Id*. at 24:13-44 This solves problems of prior art systems that used a single mapping provider such as: if the single provider became unavailable, the user had no alternative; bandwidth consumption was excessive because tiles had to be repeatedly downloaded; and response times were slow because each repositioning required a new connection to the provider's server. *Id*. at 20:18–35. Further, even if individual components were known—which LBT does not concede—an inventive concept resides in the novel arrangement of

13

LBT'S RESPONSE TO UBER'S MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 3:22-cv-03985-RFL

claim elements that allow a user to customize a mapping interface, utilize multiple mapping sources, reposition the map without re-accessing the mapping service providers, and then receive specific alerts and location information. *See X One,* 239 F. Supp. 3d at 1199. These nonconventional claim elements, arranged in a nonconventional manner, provide an inventive concept at *Alice* step two. Or, at minimum, any dispute over whether these claim elements or their combinations were well-understood, routine, or conventional cannot be resolved against LBT at this stage. *Id*.

The file history of the '355 Patent further supports the nonconventional nature of the claims over the 200+ references cited on the first three pages of the '355 Patent. During prosecution of the '355 Patent, the Examiner rejected the original claims over Holmes et al. (US2008/0028063) assigned to Microsoft, Frank et al. (US2008/0171559) assigned to AT&T Delaware Intellectual Property Inc./Workday Inc., and Busch (US2008/0248815) assigned to Meta Platforms Inc. The claims were amended to overcome this prior art based on limitations that presumptively distinguish the large number of cited references. Pettis Decl., Ex. 1 at 396–413 (Response to Non-Final Office Action, dated June 20, 2011). Further, Uber's '355 IPR Petition was denied, which suggests the claims are distinguishable over the prior art Uber chose.

Uber's *Alice* step two argument relies on a gross misreading of the claims. Specifically, Uber argues that the '355 Patent claims recite completely functional terms directed to a particular outcome. Br. 13. Such a misreading ignores the numerous, specific features and operations claimed by the '355 Patent— none of which are completely functional terms directed to a particular outcome. For example, as discussed above, claim 1 includes (1) a location management dashboard module; (2) a graphical mapping module with specific menu options for a user; (3) wizard menu; and (4) utilizing multiple mapping providers. It also includes providing specific alert messages and location information. Uber's functional-language based argument conveniently ignores these claim elements. In fact, Uber fails to point to *any* examples of functional claim elements in the '355 Patent in its step two argument.

Uber's failure to address the actual claim language is apparent in the rest of its arguments as well. Uber argues that three specific claim terms—"wizard menu," "webpage," and "website" —are conventional. This ignores the majority of the claim elements. Br. at 14-15. Uber also summarily concludes that "[u]ltimately, the '355 patent claims, like so many similar cases, provide no improvement to technology but merely invoke existing, conventional technology to carry out the abstract idea and thus

14

fail Step Two." Br. 14. But tellingly, Uber fails to cite to any of these "many similar cases." That is because when looking at all the claim elements—and not just the few cherry-picked terms that Uber relies on—the claims of the '355 Patent include nonconventional claim elements, arranged in a nonconventional manner, that solves a technical problem as discussed above. *See* Dkt. 1 (Complaint) at ¶ 54.

Uber's citation to conventional elements discussed in the specification is a red herring. All patent claims include conventional elements in some form. *See Diamond*, 450 U.S. at 188. But tellingly, the purported "conventional" elements that Uber points to represent only a fraction of what is actually claimed by the '355 Patent. Uber cites to the specification's discussion of "location coordinates," "tracking device," "wireless data transfer," "Assisted GPS," "wireless communication system," "network," "server," and "module"—arguing that the patent describes conventional, generic technologies in reference to these terms. Br. 13–14. Even if true, these terms (most of which are not even included in the claims) do not represent all—or even a fraction—of what is claimed by the '355 Patents. It is the other nonconventional terms discussed above (e.g., location management dashboard, graphical mapping module, wizard menu, utilizing multiple mapping services), and the combination of those terms, that provide the inventive concept of the '355 Patent. The specifications' reference to, and incorporation of, several prior art system also does not somehow mean the claims of the patent are conventional. In fact, it reinforces that the claimed combination was patentable over known prior art systems.

Uber also confusingly argues that because one part of the specification does not describe the "inventive concepts as an objective," there is not inventive concept at step two. Br. 14. That argument misses the point. First, it is unclear how stating that "what is needed" are "improved mapping graphical display capabilities" is not an objective. But, regardless, as Uber admits, the patent identifies an issue in the prior art that it solves. And the patent does not just state there is a need for "improved mapping graphical display capabilities" and stop there. The rest of the specification describes—in detail—how the patent solves this problem and then claims this solution. Uber ignores this. Because the '355 Patent claims this solution with an unconventional arrangement of elements, it includes an inventive concept at step two.

## V.    **CONCLUSION**

For the reasons set forth above, and on the authorities cited, the Court should deny Uber's Rule 12(c) motion for judgment on the pleadings.

Dated: April 21, 2026

Respectfully submitted,

By: /s/ *Michael J. Newton*

Michael J. Newton (SBN 156225)
Katherine G. Rubschlager (SBN 328100)
**ALSTON & BIRD LLP**
755 Page Mill Road
Building C, Suite 200
East Palo Alto, CA 94304
Telephone: (650) 838-2000
Facsimile: (650) 838-2001
mike.newton@alston.com
katherine.rubschlager@alston.com

Theodore Stevenson, III (admitted *Pro Hac Vice*)
**ALSTON & BIRD LLP**
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Telephone: (214) 922-3400
Facsimile: (214) 922-3899
ted.stevenson@alston.com

Matthew W. Howell (admitted *Pro Hac Vice*)
Eric M. Pettis (admitted *Pro Hac Vice*)
**ALSTON & BIRD LLP**
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
matthew.howell@alston.com
eric.pettis@alston.com

*Attorneys for LBT IP II LLC*

16

## **CERTIFICATE OF SERVICE**

A copy of the foregoing document was electronically filed with the Court this 21st day of April, 2026. Notice of this filing will be sent by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Michael J. Newton*

17